# Notice of Appeal to a Court of Appeals From a
# Judgment of a District Court

United States District Court
for the Western District of Wisconsin
Docket Number 3:25-cv-00078-jdp

| | |
|---|---|
| Scarlett Pavlovich,<br>Plaintiff<br><br>v.<br><br>Neil Gaiman,<br>Defendant | Notice of Appeal |

Scarlett Pavlovich, Plaintiff, appeals to the United States Court of Appeals for the 7th Circuit from the final judgment entered on October 3, 2025.

(s) /s/ Lane A. Haygood
*Attorney for* Scarlett Pavlovich
*Address*: 1700 Broadway, 16th Floor
New York, New York 10019

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCARLETT PAVLOVICH,

                              Plaintiff,                            OPINION and ORDER

    v.                                                                              25-cv-78-jdp

NEIL GAIMAN,

                              Defendant.

---

Plaintiff Scarlett Pavlovich worked as defendant Neil Gaiman's nanny for a short time in 2022. Pavlovich alleges that Gaiman used the promise of a job to sexually assault her numerous times over the span of a few weeks. She asserts claims under the Trafficking Victims Protection Act (TVPA) as well as state common law.

Pavlovich's allegations are serious and disturbing, depicting Gaiman as predatory, cruel, and sadistic. Gaiman denies Pavlovich's allegations, but the issue before the court is not whether Pavlovich's allegations are true. Rather, Gaiman moves to dismiss the case on procedural grounds, and he asserts two primary arguments. First, he says that the case does not belong in the United States because all of the alleged conduct occurred while both parties were living in New Zealand, where Pavlovich is a citizen and Gaiman has permanent residency status. Second, he says that the civil enforcement provisions of the TVPA do not apply to extraterritorial conduct, and the court should not exercise supplemental jurisdiction over the state-law claims.[1]

---

[1] Gaiman also contends that Pavlovich should be required to exhaust her administrative remedies and that the court should abstain under comity principles. The court need not consider these issues.

Both arguments have merit, but the first issue is dispositive, so it is not necessary to resolve the second. The only connection that Wisconsin or the United States has with this lawsuit is that Gaiman has a residence in this state and he may live here currently. All of the relevant events occurred in New Zealand, Pavlovich is a New Zealand citizen, both parties were living in New Zealand during the relevant time, all relevant evidence and most potential witnesses are located in New Zealand. Gaiman and Amanda Palmer (Gaiman's wife) now live in the United States, but both of them have agreed to accept service in New Zealand.[2] Under these circumstances, it is clear that New Zealand is the more appropriate forum for resolving this dispute, so the court will dismiss the case without prejudice. If Pavlovich sues Gaiman in New Zealand, and he refuses to accept service there, Pavlovich may move to reopen this case.

BACKGROUND

The following allegations are taken from the complaint and Pavlovich's declaration. The court accepts the allegations as true for the purpose of Gaiman's motion to dismiss. The court may look outside the complaint when deciding a motion to dismiss based on the forum non conveniens doctrine, *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016), but Gaiman does not dispute any facts related to determining the appropriate venue. He disputes Pavlovich's allegations of misconduct, and he submits text messages that he says exonerate him, but that evidence is not relevant to the motion to dismiss, so the court has not considered it.

---

[2] Pavlovich originally named Palmer as a defendant, alleging that she conspired with Gaiman to engage in human trafficking, but Pavlovich has since dismissed Palmer, Dkt. 40, and is proceeding in a separate lawsuit against Palmer in Massachusetts, where Palmer resides. *See Pavlovich v. Palmer*, No. 25-cv-10263 (D. Mass. filed Feb. 3, 2025). Palmer has also moved to dismiss that case on the ground that it belongs in New Zealand. *Id.*, Dkt. 16.

Pavlovich is a New Zealand citizen. In 2020, she met Gaiman's wife Amanda Palmer in New Zealand, where both Palmer and Gaiman were living. Pavlovich does not say how she met Palmer, only that she would "sometimes do personal tasks for Palmer, such as running errands, babysitting, or helping with household chores." Dkt. 2, ¶ 28. Pavlovich was 22 years old at the time and "economically insecure." *Id.* ¶ 30. Gaiman and Palmer were living in New Zealand in separate houses on Waiheke Island, which is 16 miles from Auckland and accessible by public ferry. Gaiman is a citizen of the United Kingdom, but he has permanent resident status in New Zealand.

Pavlovich did not meet Gaiman until February 2022. He sexually assaulted her during their first meeting while she was supposed to be babysitting his child. The assault occurred at Gaiman's home on Waiheke Island after Gaiman directed Pavlovich to remove her clothes and get in a bathtub. Gaiman got in the bathtub with her, digitally penetrated her rectum and ejaculated on her face despite her objections.

A few days later, Pavlovich accepted Palmer's offer for a job as Gaiman and Palmer's live-in nanny. Pavlovich was "desperate for secure employment and affordable housing." *Id.* ¶ 116.

Pavlovich worked as Gaiman and Palmer's nanny for only about three weeks. Gaiman assaulted her repeatedly during that time, both sexually and physically. These assaults included "forcible sodomy" that caused Pavlovich "severe" and "overwhelming" pain, *id.* ¶¶ 140–41, and oral sex that caused her to vomit. He also choked her, struck her genitals with a belt, and forced her to lick urine off his hand.

Pavlovich did not leave because she "could not easily afford transport off the island," and she had nowhere else to go. *Id.* ¶¶ 201–09. She had not yet been paid for her services as a nanny.

After a few weeks, Gaiman left New Zealand for Europe, and he took his child with him. Pavlovich then moved back to Auckland and she sought psychiatric care after she began contemplating suicide. In late March 2025, Gaiman paid Pavlovich for her work as a nanny.

Pavlovich filed a complaint with the police against Gaiman in New Zealand, but the police "took no action because Palmer refused to talk to them." *Id.* ¶ 253.

Pavlovich currently lives in the United Kingdom where she is attending university. Gaiman lives in Menomonie, Wisconsin. He has permanent residency status in the United States.

## ANALYSIS

Gaiman moves to dismiss this case under the doctrine of forum non conveniens, which applies "when [the court] determines that there are strong reasons for believing [the case] should be litigated in the courts of another, normally a foreign, jurisdiction." *Deb*, 832 F.3d at 805. The forum non conveniens analysis proceeds in two steps. First, the moving party must show that an alternative forum is both "available" and "adequate." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). Second, if the moving party makes that showing, the court weighs various factors related to both the private and public interest, such as the relative burdens of litigating in each forum and the relationship that each forum has with the dispute. *See Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.,*

29 F.4th 351, 357 (7th Cir. 2022). The decision whether to dismiss a case on forum non conveniens grounds is committed to the discretion of the district court. *Deb*, 832 F.3d at 805.

For the reasons below, the court concludes that New Zealand is an available and adequate forum and that the private and public interest factors show that New Zealand is a more appropriate forum for resolving this dispute.

## A. Availability and adequacy of remedy in New Zealand

An alternative forum is available if all of the parties are amenable to process and within the forum's jurisdiction. *Stroitelstvo*, 589 F.3d at 421. In this case, there is no dispute that both Pavlovich and Gaiman are amenable to process in New Zealand, so the court need not analyze that issue for them.

An alternative forum is adequate if it provides the plaintiff with a "fair hearing to obtain some remedy for the alleged wrong." *Id.* In this case, Pavlovich's New Zealand law expert summarizes the remedies available to Pavlovich in New Zealand, Dkt. 38-1:

- Parties may not file civil lawsuits seeking compensatory damages for torts. Instead, a party may seek compensatory damages under the New Zealand Accident Compensation Act, which creates an administrative process that does not assign fault to either party. Although the law refers to "accidents," the law encompasses intentional torts as well.

- Parties may not recover damages for emotional injuries. Instead, they may receive certain "rehabilitative entitlements," including mental health treatment.

- Parties may file civil lawsuits for exemplary or punitive damages when another party engages in "truly outrageous conduct."[3]

Gaiman does not dispute this summary for the purpose of his motion to dismiss, so the court will assume that the summary is accurate.

Pavlovich contends that New Zealand's remedies are not adequate because they do not allow civil lawsuits for compensatory damages, they do not recognize a civil cause of action for human trafficking, and Pavlovich cannot obtain any remedy for mental injury because the only remedy offered is treatment and that is limited to individuals who reside in New Zealand. All of these objections fail. A remedy is not inadequate simply because it is not as robust or is less favorable than the remedy the plaintiff could obtain in the United States. Rather, the question is whether this is one of the "rare circumstances" in which "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 245, 255 n.22 (1981).

The limitations that Pavlovich identifies in New Zealand's remedies are not the equivalent of "no remedy at all." Courts have rejected arguments that the same types of limitations render a remedy inadequate.

As for the requirement to seek compensatory damages through an administrative process rather than a lawsuit, "nonjudicial modes of dispute resolution are common, and proper if adequate, as they often are." *Veljkovic v. Carlson Hotels, Inc.*, 857 F.3d 754, 756–57 (7th Cir.

---

[3] It is also undisputed that the conduct alleged in the complaint violates New Zealand criminal law against human trafficking and that Pavlovich could receive monetary "reparations" if Gaiman were convicted. *See* Dkt. 38-1, § 2.31. Neither party cites authority on whether the court may consider remedies that could be obtained through criminal law, so the court will not consider that issue.

2017). In support of that conclusion, the court in *Veljkovic* cited *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001), in which the court considered whether New Zealand's Accident Compensation Act provided an adequate remedy for tort victims. The court in *Lueck* concluded that the source of the remedy was irrelevant and that the administrative remedies provided under the Act were adequate. Other courts have reached the same conclusion, both about the adequacy of administrative remedies generally, *see Imamura v. Gen. Elec. Co.*, 957 F.3d 98, 111 (1st Cir. 2020); *Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 250–51 (4th Cir. 2011), and the adequacy of remedies under New Zealand's Accident Compensation Act specifically, *see Flack v. Nutribullet, L.L.C.*, No. 218CV05829DDPSSX, 2018 WL 6330421, at *3 (C.D. Cal. Dec. 4, 2018); *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 13-CV-19418, 2014 WL 637189, at *3–4 (S.D.W. Va. Feb. 18, 2014); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 887 F.Supp. 1469, 1475 (N.D. Ala. 1995); *Stonnell v. Int'l Harvester Co.*, 478 N.E.2d 518 (Ill. Ct. App. 1985). Pavlovich cites no contrary authority.

As for the lack of a civil cause of action for human trafficking in New Zealand, the alternative forum does not need to "support the full array of legal claims" that the plaintiff could assert in the United States. *Stroitelstvo,* 589 F.3d at 422. Rather, the question is whether the remedy provided by the alternative forum covers the "subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 255 n.22. In this case, Pavlovich seeks damages for harm caused by sexual and physical assaults, and New Zealand provides remedies for such harm, including

compensatory and punitive damages.[4] Pavlovich does not identify any harms caused by the alleged trafficking that are distinct from the harms caused by the alleged assaults.

As for the limitations on remedies for emotional injuries, Pavlovich says she will be left without any remedy because the only remedy New Zealand provides is mental health treatment, but she does not qualify for that because she now lives outside New Zealand. She cites a letter that she says is from "a therapist who works with the ACC [Accident Compensation Corporation]." Dkt. 39-1. The letter states that "we can't continue ACC-funded therapy when you're living overseas." *Id*. The letter is hearsay, but even if the court assumes that Pavlovich no longer qualifies for treatment, that is not enough to show that New Zealand is an inadequate forum, for two reasons. First, the letter suggests that Pavlovich was receiving free mental health treatment through July 2024, and that treatment was discontinued only because of Pavlovich's decision to leave New Zealand. So Pavlovich has already received a remedy for her mental injuries. Second, just as the alternative forum need not create a cause of action identical to the United States, the alternative forum can be adequate even if the remedies provided are not as "comprehensive or as favorable as the claims a plaintiff might bring in an American court." *Stroitelstvo*, 589 F.3d at 421. The remedies provided by New Zealand are substantial, and that is enough. *See Veljkovic*, 857 F.3d at 756–57.

---

[4] Pavlovich's legal expert questions how often punitive damages are awarded for sexual assault in New Zealand. Dkt. 38-1, § 2.17. But the expert does not contend that punitive damages are unavailable if a sexual assault victim can meet the legal standard. The court does not scrutinize the likelihood of a plaintiff's success in the alternative forum, so long as there is "some potential avenue for redress." *Stroitelstvo*, 589 F.3d at 423–24; *see also id.* (Bulgaria was an adequate forum despite possibility that Bulgarian courts would not recognize claims asserted by some of the defendants); *Instituto Mexicano*, 29 F.4th at 358–59 (Mexico was an adequate forum even if success was "less likely" for the plaintiff there based on the possibility that "Mexican courts are . . . unwilling[] to address the responsibility of foreign parents of Mexican agents") (internal quotation marks omitted).

## B. Public and private interest factors

The court's remaining task is to weigh the factors for and against dismissal for forum non conveniens. A threshold question is how much deference the court must give to Pavlovich's choice of forum. When the plaintiff is suing in her home forum, "a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors strongly favors the defendant." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). But "the presumption in the plaintiff's favor applies with less force" when "the plaintiff is suing far from home." *In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 955–56 (7th Cir. 2007). When, as in this case, a foreign plaintiff is suing a United States resident, "the presumption in favor of giving plaintiffs their choice of court is little more than a tie breaker," and "all really that the court is left to weigh is the relative advantages and disadvantages of the alternative forums." *Instituto Mexicano*, 29 F.4th at 357–58 (internal quotations omitted).

The factors the court must consider fall into two broad categories. The first is convenience, or the "practical problems that make trial of a case easy, expeditious and inexpensive." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994) (internal quotation marks omitted). The primary question under this category is which forum has better access to witnesses and evidence. *Id.*; *see also Stroitelstvo Bulgaria*, 589 F.3d at 425 (affirming dismissal in part because witnesses and evidence were located in another country); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 749–55 (7th Cir. 2008) (same). The second category is the public interest. For the purpose of this case, the primary question under this category is which forum

has a stronger connection to the dispute. *Id.*[5] Both categories of factors clearly favor dismissal in this case.[6]

### 1. Private interest factors

As for convenience, Gaiman identifies numerous potential witnesses who are located in New Zealand, including friends of Pavlovich with whom she discussed her allegations against Gaiman, Gaiman's employees and neighbors who witnessed interactions between the parties, medical and police staff Pavlovich spoke to, and various other third parties who could testify about Pavlovich's whereabouts during the relevant time. Dkt. 22. Gaiman also identifies evidence located in New Zealand, including Pavlovich's medical and bank records, which relate to her damages and allegations of economic insecurity. *Id.* Gaiman says he will not be able to compel depositions or other discovery in New Zealand from the United States.

Pavlovich disputes both the importance of the witnesses and the difficulty that Gaiman will have in presenting a defense from the United States. As for witnesses, Pavlovich says that the only important witnesses are Gaiman, Palmer, and Pavlovich, and that Wisconsin is a more convenient forum than New Zealand for all of them. Pavlovich also says that proceeding with this case against Gaiman in New Zealand would it make it more difficult to coordinate this case with the one against Palmer, which is proceeding in Massachusetts.

---

[5] Public interest factors also include things like the relative congestion of courts in each forum and potential difficulties arising about conflict of laws. *Instituto Mexicano*, 29 F.4th at 360. But the parties do not assert arguments based on those factors, so the court will not consider them.

[6] Gaiman also relies on an "independent contractor agreement" with Pavlovich that requires the parties to bring disputes "relating to" the agreement in New Zealand. Dkt. 22-3. Gaiman does not explain how a lawsuit about sexual assault relates to Pavlovich's status as an independent contractor. In any event, the court need not consider the agreement because dismissal is appropriate under the forum non conveniens doctrine even without the agreement.

These are not persuasive reasons for retaining jurisdiction. Gaiman and Palmer are both objecting to being sued in the United States, and they have agreed to submit to the jurisdiction of New Zealand and testify there.[7] Palmer has not agreed to testify in Wisconsin, and she is likely outside this court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1) (limiting subpoena power to 100 miles of where witness lives, works, or regularly transacts business). So New Zealand is the one place where Pavlovich could seek relief against both defendants in the same venue. This is a significant consideration. Even if both this court and the court in Massachusetts were to retain jurisdiction over both cases, proceeding against both defendants in separate lawsuits would present logistical challenges. Pavlovich's claims against each defendant overlap substantially, raising the potential for inconsistent rulings. For these reasons, the proximity of this district to Gaiman and Palmer's current residences is not a significant factor.

As for Pavlovich's convenience, she says that the United States is closer to where she lives in the United Kingdom than New Zealand is. But both forums are thousands of miles away and in different countries from where Pavlovich resides, so this argument is not persuasive. If Pavlovich's own convenience were a high priority, she could have sued Gaiman in the United Kingdom, where Gaiman is a citizen.

As for the importance of the New Zealand witnesses, Pavlovich says that they are not important because none of them were present when the alleged assaults occurred. But Pavlovich does not allege that she has any physical or other objective evidence to support her claims,

---

[7] Palmer consented to the jurisdiction of New Zealand in her own motion to dismiss on forum non conveniens grounds, which she filed in the suit pending against her in Massachusetts. *See Pavlovich v. Palmer*, No. 25-cv-10263 (D. Mass.), Dkt. 17, at 13 (Palmer "consents to jurisdiction in New Zealand and would agree to testify there.").

which means that credibility will be a critical issue. The witnesses Gaiman identifies could either support or undermine Pavlovich's version of events about where she was on particular days and times, what she told others about her interactions with Gaiman at the time, what her financial circumstances were, and whether she was experiencing emotional distress as she says. Any of that testimony could be important to evaluating the parties' credibility.

Pavlovich objects that Gaiman has not identified any specific testimony that a particular witness will provide. But the defendant is "not required to specifically indicate what evidence would be out of reach if litigation proceeded [in the United States] to succeed on a forum non conveniens motion. Instead, [the defendant is] only obligated to provide enough information to enable the District Court to balance the parties' interest." *Instituto Mexicano*, 29 F.4th at 359 (internal quotation marks omitted). Gaiman has met that standard by identifying potential witnesses and categories of evidence that are located in New Zealand and are likely to be relevant to Pavlovich's claims.

As for the difficulty of obtaining testimony from those witnesses, Pavlovich acknowledges that Gaiman would not be able to compel depositions of New Zealand residents through ordinary rules of discovery. Pavlovich also does not dispute that New Zealand residents would be outside this court's subpoena power. But she cites her legal expert's statements that Gaiman could petition the High Court of Zealand to exercise its discretion to compel depositions, Dkt. 38-1, §§ 4.3–4.8, and she says that Gaiman could use those depositions in lieu of in-person testimony at trial. But the question is not whether it would be impossible for the defendant to present a defense in this court; the question is whether New Zealand is a clearly more convenient forum. In this case, all the witnesses and evidence are either located

in New Zealand or are subject to New Zealand's jurisdiction. The same cannot be said of this court. So it is clear that, on the whole, New Zealand is more convenient.

### 2. Public interest factors

The public interest factors weigh even more strongly in favor of dismissal: the United States has virtually no connection with the subject matter of the lawsuit. All relevant events occurred in New Zealand, all parties were living in New Zealand during the relevant time, Pavlovich is a New Zealand citizen, and Gaiman was a permanent resident in New Zealand at the time. Pavlovich also identifies no ripple effects that this case could have that would implicate a United States interest, such as "national security in either the strategic or the economic sense of that term," or "compliance with an important U.S. regulatory scheme." *U.S.O.*, 547 F.3d at 755.

Wisconsin jurors would be scratching their heads about how and why they were being asked to decide a dispute regarding such far away events that have nothing to do with them. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Am. Dredging*, 510 U.S. at 448 (internal quotation marks omitted). The court of appeals consistently affirms dismissals on forum non conveniens grounds when the United States has only a tenuous connection to the dispute. *See, e.g., Instituto Mexicano*, 29 F.4th at 360–61; *Veljkovic*, 857 F.3d at 756; *Stroitelstvo Bulgaria*, 589 F.3d at 425.

Pavlovich says that the doctrine of forum non conveniens should not apply to a statute like the Trafficking Victims Protection Act (TVPA), which is intended to apply extraterritorially. But this argument has multiple flaws.

As an initial matter, Pavlovich is putting the cart before the horse because the law is unsettled whether the civil remedies provision in the TVPA applies outside the United States.

Courts presume that a federal statute has only domestic application unless Congress has "affirmatively and unmistakenly" stated otherwise in the statute. *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 335 (2016).

In this case, the TVPA states that "the courts of the United States have extra-territorial jurisdiction over any offense" identified in certain criminal laws that prohibit trafficking. 18 U.S.C. § 1596. Those same laws can also be enforced through a civil action, 18 U.S.C. § 1595, but the civil remedy provision does *not* say that it has extraterritorial application. That is a potential problem for Pavlovich because the Supreme Court held in *RJR Nabisco v. European Community* that the civil remedies provision in the Racketeer Influenced and Corrupt Organizations Act (RICO) does not apply extraterritorially, even though many of the substantive criminal provisions that provide the basis for a civil action do. 579 U.S. 325 (2016). The Court stated that "the presumption against extraterritoriality must be applied separately to both RICO's substantive prohibitions and its private right of action" because "[t]he creation of a private right of action raises issues beyond the mere consideration whether underlying primary conduct should be allowed or not, entailing, for example, a decision to permit enforcement without the check imposed by prosecutorial discretion" and "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." *Id.* at 346–47, 350. There is no language in RICO's civil enforcement provision suggesting that it reaches foreign injuries, so the Court limited the provision to domestic conduct. *Id.* at 350.

Neither the Supreme Court nor the Court of Appeals for the Seventh Circuit have considered whether the civil remedy provision in TVPA applies extraterritorially. And there is a split in authority regarding whether it does. *Roe v. Howard* concluded that the civil remedy

14

provision does apply extraterritorially, reasoning that "§ 1595 directly incorporates predicate offenses that govern foreign conduct, providing strong textual evidence of its extraterritorial effect when applied to those predicates" and that the purpose of the TVPA was to "address the problem of human trafficking throughout the world." 917 F.3d 229, 242–43 (4th Cir. 2019). *Mia v. Kimberly-Clark Corporation* disagreed with *Roe*, observing that it had adopted the same reasoning the Supreme Court rejected in *RJR Nabisco*. No. 22-cv-2353, 2025 WL 752564, at *7 (D.D.C. Mar. 10, 2025).

*Mia* appears to have the better argument. Both RICO and the TVPA include criminal provisions that apply extraterritorially and civil enforcement provisions that incorporate the prohibitions on criminal conduct but do not include their own language regarding extraterritorial application. So the structure of the two statutes appears to be the same, suggesting that *RJR Nabisco* is controlling. The distinction that *Roe* tried to make about the purpose of the TVPA is not persuasive: "The question is not whether we think Congress would have wanted a statute to apply to foreign conduct if it had thought of the situation before the court." *RJR Nabisco*, 579 U.S. at 335. Rather, the text of the statute itself must provide a "clear indication of an extraterritorial application." *Id.* Pavlovich does not identify such a clear indication in the civil remedy provision.

But even if the TVPA civil remedy provision does apply outside the United States, that would not be dispositive. Pavlovich cites no authority from the Supreme Court or the Seventh Circuit suggesting that a statute's extraterritorial application is an important consideration in a forum non conveniens analysis. The court of appeals has considered whether the plaintiff is asking the court to apply domestic or foreign law, *see, e.g.*, *U.S.O.*, 547 F.3d at 755; *Instituto Mexicano*, 29 F.4th at 361, but that is just one factor of many.

15

For example, in *Instituto Mexicano*, the court acknowledged that "the United States has some interest in malfeasance by its citizens abroad," but it was reasonable for the district court to dismiss the case on forum non conveniens grounds when most of the alleged misconduct took place in Mexico. 29 F.4th at 360–61. *Instituto Mexicano* cited another case in which the court concluded that "Illinois has a strong incentive to punish its citizens for . . . legal wrongs committed abroad," but "it was within the district court's discretion to conclude that the U.K.'s stronger interest in protecting its citizens from legal wrongs committed in England by foreign citizens makes England the more appropriate forum." *Id.* (quoting *Cap. Markets Int'l, Ltd. v. Geldermann*, No. 98-3242, 1999 WL 439405, at *4 (7th Cir. June 21, 1999)). That is essentially the same situation here. The only interest the United States has in this case is that it involves alleged misconduct by a permanent resident of the United States. But Gaiman is also a permanent resident of New Zealand, so that factor does not weigh heavily in favor of retaining jurisdiction. New Zealand has a stronger interest in protecting one of its own citizens from wrongful conduct committed in New Zealand by a New Zealand permanent resident.

The bottom line is that New Zealand has a much stronger interest in this case than the United States does and, on the whole, New Zealand is a more convenient forum than the United States for resolving this dispute. So the court will grant the motion to dismiss on forum non conveniens grounds.

ORDER

IT IS ORDERED that defendant Neil Gaiman's motion to dismiss, Dkt. 18, is GRANTED. The case is DISMISSED without prejudice under the doctrine of forum non conveniens. The clerk of court is directed to enter judgment accordingly and close this case.

Entered October 3, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCARLETT PAVLOVICH,

     Plaintiff,

  v.

NEIL GAIMAN,

     Defendant.

Case No.  25-cv-78-jdp

---

## JUDGMENT IN A CIVIL CASE

---

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of defendant against the plaintiff dismissing this case without prejudice under the doctrine of forum non conveniens.

/s/ Deputy Clerk

10/03/2025

_____

_____

Joel Turner, Clerk of Court

Date

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?158275498738369-L_1_0-1

Case: 3:25-cv-00078-jdp    Document #: 54-3    Filed: 10/03/25    Page 1 of 8
Case: 25-2754    Document: 1-1    Filed: 10/03/2025    Pages: 27    (20 of 27)

APPEAL, CLOSED, JMM, PROTECTIVE_ORDER,

**U.S. District Court**
**Western District of Wisconsin (Madison)**
**CIVIL DOCKET FOR CASE #: 3:25-cv-00078-jdp**

Pavlovich, Scarlett v. Gaiman, Neil
Assigned to: District Judge James D. Peterson
Referred to: Magistrate Judge Anita Marie Boor
Cause: 28:1331 Fed. Question

Date Filed: 02/03/2025
Date Terminated: 10/03/2025
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Scarlett Pavlovich**                    represented by    **Akiva M Cohen**
Kamerman Uncyk Soniker & Klein, P.C.
1700 Broadway
Ste 16 FL
New York, NY 10019
917-742-6193
Fax: 866-221-6122
Email: acohen@kusklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dylan Schmeyer**
Kamerman, Uncyk, Soniker & Klein PC
3598 E 106th Ave
80233
Thornton, CO 80233
719-930-5942
Email: dschmeyer@kusklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lane Andrew Haygood**
Kamerman, Uncyk, Soniker & Klein, PC
1700 Broadway
16th Floor
New York, NY 10019
646-845-6085
Email: lhaygood@kusklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew R. Jelenchick**
Niebler, Pyzyk, Roth and Carrig LLP
P.O. Box 444
N94 W17900 Appleton Ave, #200

Menomonee Falls, WI 53052-0444
262-251-5330
Fax: 262-251-1823
Email: mjelenchick@nprclaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Nimmo**
Wahlberg, Woodruff, Nimmo & Sloane,
LLP
4601 DTC Boulevard, Ste. 950
Denver, CO 80237
303-571-5302
Email: michael@denvertriallawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas D. Neville**
Kamerman, Uncyk, Soniker & Klein, PC
1700 Broadway
16th Floor
New York, NY 10019
646-842-1943
Email: tneville@kusklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Neil Richard Gaiman**                    represented by    **Andrew Brad Brettler**
9119 W. Sunset Blvd.
West Hollywood, CA 90069
310-278-2111
Fax: 310-550-7055
Email: abrettler@berkbrettler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian T. Fahl**
Kravit Hovel & Krawczyk, S.C.
825 N. Jefferson Street
Milwaukee, WI 53202
414-271-7100 x118
Fax: 414-271-8135
Email: btf@kravitlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jake Camara**

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?158275498738369-L_1_0-1

Case: 3:25-cv-00078-jdp    Document #: 54-3    Filed: 10/03/25    Page 3 of 8
Case: 25-2754    Document: 1-1    Filed: 10/03/2025    Pages: 27    (22 of 27)

Berk Brettler LLP
9119 Sunset Blvd.
West Hollywood, CA 90069
310-278-2111
Email: jcamara@berkbrettler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen E. Kravit**
Kravit, Hovel & Krawczyk, S.C.
825 North Jefferson Street
Suite 500
Milwaukee, WI 53202
414-271-7100x105
Fax: 414-271-8135
Email: kravit@kravitlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Haslam**
Kravit, Hovel & Krawczyk, S.C.
825 North Jefferson Street
Suite 500
Milwaukee, WI 53202
414-271-7100
Email: weh@kravitlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Amanda Mackinnon Palmer**
*TERMINATED: 05/02/2025*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/03/2025 | 1 | Motion to Admit Thomas D. Neville Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3557810.) by Plaintiff Scarlett Pavlovich. (Neville, Thomas) (Entered: 02/03/2025) |
| 02/03/2025 | 2 | COMPLAINT against All Defendants. ( Filing fee $ 405 receipt number AWIWDC-3557815.), filed by Scarlett Pavlovich. (Neville, Thomas) (Entered: 02/03/2025) |
| 02/03/2025 | 3 | Exhibit to 2 Complaint filed by Scarlett Pavlovich (Neville, Thomas) (Entered: 02/03/2025) |
| 02/04/2025 | | Case randomly assigned to District Judge James D. Peterson and Magistrate Judge Anita Marie Boor. (lak) (Entered: 02/04/2025) |
| 02/04/2025 | | Standard attachments for Judge James D. Peterson required to be served on all parties with summons or waiver of service: NORTC, Corporate Disclosure Statement. (lak) (Entered: 02/04/2025) |

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?158275498738369-L_1_0-1

Case: 3:25-cv-00078-jdp    Document #: 54-3    Filed: 10/03/25    Page 4 of 8
Case: 25-2754    Document: 1-1    Filed: 10/03/2025    Pages: 27    (23 of 27)

| 02/04/2025 | 4 | ** TEXT ONLY ORDER ** <br><br> ORDER granting 1 Motion to Admit Thomas Neville Pro Hac Vice. Signed by Magistrate Judge Anita Marie Boor on 2/4/2025. (lak) (Entered: 02/04/2025) |
|---|---|---|
| 02/13/2025 | 5 | Motion to Admit Dylan Schmeyer Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3563778.) by Plaintiff Scarlett Pavlovich. (Schmeyer, Dylan) (Entered: 02/13/2025) |
| 02/13/2025 | 6 | Motion to Admit Lane Andrew Haygood Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number CWIWDC-3563782.) by Plaintiff Scarlett Pavlovich. (Haygood, Lane) (Entered: 02/13/2025) |
| 02/13/2025 | 7 | Motion to Admit Akiva M Cohen Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3563795.) by Plaintiff Scarlett Pavlovich. (Cohen, Akiva) (Entered: 02/13/2025) |
| 02/14/2025 | 8 | ** TEXT ONLY ORDER ** <br><br> ORDER granting 5 Motion to Admit Dylan M. Schmeyer Pro Hac Vice; granting 6 Motion to Admit Lane A. Haygood Pro Hac Vice; granting 7 Motion to Admit Akiva M. Cohen Pro Hac Vice. Signed by Magistrate Judge Anita Marie Boor on 2/14/2025. (lak) (Entered: 02/14/2025) |
| 02/14/2025 | 9 | Notice of Appearance *as Co-counsel* filed by Matthew R. Jelenchick for Plaintiff Scarlett Pavlovich. (Jelenchick, Matthew) (Entered: 02/14/2025) |
| 02/14/2025 | 10 | Request for Issuance of Summons by Plaintiff Scarlett Pavlovich. (Jelenchick, Matthew) (Entered: 02/14/2025) |
| 02/18/2025 | 11 | Summons Issued as to Neil Richard Gaiman. (lak) (Entered: 02/18/2025) |
| 02/25/2025 | 12 | Request for Issuance of Summons by Plaintiff Scarlett Pavlovich. (Jelenchick, Matthew) (Entered: 02/25/2025) |
| 02/26/2025 | 13 | Summons Issued as to Amanda Mackinnon Palmer. (lak) (Entered: 02/26/2025) |
| 03/04/2025 | 14 | Notice of Appearance filed by Stephen E. Kravit for Defendant Neil Richard Gaiman. (Kravit, Stephen) (Entered: 03/04/2025) |
| 03/04/2025 | 15 | Notice of Appearance filed by Brian T. Fahl for Defendant Neil Richard Gaiman. (Fahl, Brian) (Entered: 03/04/2025) |
| 03/04/2025 | 16 | Motion to Admit Jake Camara Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3573359.) by Defendant Neil Richard Gaiman. (Camara, Jake) (Entered: 03/04/2025) |
| 03/04/2025 | 17 | Motion to Admit Andrew Brad Brettler Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3573358.) by Defendant Neil Richard Gaiman. (Brettler, Andrew) (Entered: 03/04/2025) |
| 03/04/2025 | 18 | **MOTION TO DISMISS** by Defendant Neil Richard Gaiman. Brief in Opposition due 3/25/2025. Brief in Reply due 4/4/2025. (Kravit, Stephen) (Entered: 03/04/2025) |
| 03/04/2025 | 19 | Brief in Support of 18 Motion to Dismiss by Defendant Neil Richard Gaiman (Kravit, Stephen) (Entered: 03/04/2025) |
| 03/04/2025 | 20 | Motion to Seal by Defendant Neil Richard Gaiman. (Kravit, Stephen) (Entered: 03/04/2025) |

| 03/04/2025 | 21 | Disregard. (Sealed Document) Modified on 3/4/2025. (lak) (Entered: 03/04/2025) |
|---|---|---|
| 03/04/2025 | 22 | Declaration of Neil Gaiman filed by Defendant Neil Richard Gaiman re: 18 Motion to Dismiss (Sealed Document) (Attachments: <br># 1 Exhibit A - WhatApp Messages, <br># 2 Exhibit B - Screenshot, <br># 3 Exhibit C - Contractor Agreement) (Kravit, Stephen) (Entered: 03/04/2025) |
| 03/04/2025 | 23 | Redaction to 22 Declaration, *of Neil Gaiman* by Defendant Neil Richard Gaiman (Attachments: <br># 1 Exhibit A - WhatsApp Messages, <br># 2 Exhibit B - Screenshot, <br># 3 Exhibit C - Contractor Agreement) (Kravit, Stephen) (Entered: 03/04/2025) |
| 03/05/2025 | 24 | ** TEXT ONLY ORDER ** <br>ORDER granting 16 Motion to Admit Jake A. Camara Pro Hac Vice; granting 17 Motion to Admit Andrew B. Brettler Pro Hac Vice. Signed by Magistrate Judge Anita Marie Boor on 3/5/2025. (lak) (Entered: 03/05/2025) |
| 03/13/2025 | 25 | Motion to Admit Michael Nimmo Pro Hac Vice. ( Pro Hac Vice fee $ 100 receipt number AWIWDC-3578259.) by Plaintiff Scarlett Pavlovich. (Nimmo, Michael) (Entered: 03/13/2025) |
| 03/14/2025 | 26 | ** TEXT ONLY ORDER ** <br>ORDER granting 25 Motion to Admit Michael Nimmo Pro Hac Vice. Signed by Magistrate Judge Anita Marie Boor on 3/14/2025. (lak) (Entered: 03/14/2025) |
| 03/14/2025 | 27 | Notice of Appearance filed by Michael Nimmo for Plaintiff Scarlett Pavlovich. (Nimmo, Michael) (Entered: 03/14/2025) |
| 03/19/2025 | 28 | ** TEXT ONLY ORDER ** <br>For good cause, defendant's motion to seal is GRANTED. Signed by Magistrate Judge Anita Marie Boor on 3/19/2025. (rks) (Entered: 03/19/2025) |
| 03/19/2025 | 29 | Motion for Extension of Time *to Oppose Motion to Dismiss* by Plaintiff Scarlett Pavlovich. Response due 3/26/2025. (Attachments: <br># 1 Exhibit Exhibit A - Email re: Letter in Pavlovich v. Gaiman, <br># 2 Exhibit Exhibit B - Defendant's Email Response, <br># 3 Exhibit Exhibit C - Email re: Pavlovich v. Gaiman) (Haygood, Lane) (Entered: 03/19/2025) |
| 03/20/2025 | 30 | ** TEXT ONLY ORDER ** <br>Notice to parties: <br>When I was in private practice, my firm served as local counsel to Todd McFarlane in *Gaiman v. McFarlane*, Case No. 02-CV-48 in this district. I did not make a formal appearance, and I had only minor involvement in the case. To the best of my recollection, I may have reviewed some briefs written by others and I attended part of the trial. I do not believe that my involvement with *Gaiman v. McFarlane* warrants my recusal. I am making this disclosure now so that if any party disagrees, the party may move for recusal before I have to make substantive decisions in this case. For the parties who have appeared, a motion for recusal should be filed by March 28; the other parties may respond by April 4. If any party who has yet to appear seeks my recusal, they must do so within seven days of their first appearance. Signed by District Judge James D. Peterson on 3/20/2025. (rks) (Entered: 03/20/2025) |

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?158275498738369-L_1_0-1

Case: 3:25-cv-00078-jdp    Document #: 54-3    Filed: 10/03/25    Page 6 of 8
Case: 25-2754    Document: 1-1    Filed: 10/03/2025    Pages: 27    (25 of 27)

| 03/21/2025 | 31 | ** TEXT ONLY ORDER ** Plaintiff has filed a motion for extension of time, Dkt. 29 , asking to move her deadline to respond to defendant's motion to dismiss from March 25 to April 11. Plaintiff explains that it sent defendant a Rule 11 letter that triggered a safe harbor period expiring on March 28. Per plaintiff, this letter relates to defendant's use of text messages in its motion to dismiss, although it is not clear how the letter relates to the actual merits of the motion. Plaintiff also explains that defendant's motion to dismiss references New Zealand law and that plaintiff needs more time to consult with an expert on defendant's characterization of the law. The court will move deadlines for good cause only, and it is skeptical that plaintiff's reasons meet that standard. Wanting to see whether defendant will withdraw or change its motion to dismiss in response to a Rule 11 letter alone is not sufficient reason to postpone the response deadline. If defendant's motion is flawed, plaintiff should be prepared to explain that to the court now. And the reference to New Zealand law should not be entirely unexpected given the allegations in the complaint. All that said, in light of the varied issues raised in the motion to dismiss, the court will GRANT plaintiff's motion and offer both parties some additional time. The following deadlines are RESET: Plaintiff's opposition is due April 11; defendant's reply is due April 30. Signed by Magistrate Judge Anita Marie Boor on 3/21/2025. (rks) (Entered: 03/21/2025) |
|---|---|---|
| 03/21/2025 | 32 | Notice of Appearance filed by Wesley Haslam for Defendant Neil Richard Gaiman. (Haslam, Wesley) (Entered: 03/21/2025) |
| 03/24/2025 | | Disregard; docketed in error. Telephone Pretrial Conference has been removed calendar. Modified on 3/24/2025 (rks). (Entered: 03/24/2025) |
| 03/27/2025 | 33 | Notice by Plaintiff Scarlett Pavlovich . (Neville, Thomas) (Entered: 03/27/2025) |
| 04/01/2025 | | Action Requested: Plaintiff is requested to promptly file proof of service of the complaint as to Amanda Mackinnon Palmer. (rks) (Entered: 04/01/2025) |
| 04/02/2025 | 34 | Certificate of Service by Plaintiff Scarlett Pavlovich as to 2 Complaint. (Jelenchick, Matthew) (Entered: 04/02/2025) |
| 04/02/2025 | 35 | Notice by Plaintiff Scarlett Pavlovich *Letter from Attorney Dylan M. Schmeyer re: Disposition of Amanda Palmer*. (Attachments: # 1 Exhibit Exhibit 1 - Email exchange re: Massachusetts litigation) (Jelenchick, Matthew) (Entered: 04/02/2025) |
| 04/11/2025 | 36 | Brief in Opposition by Plaintiff Scarlett Pavlovich re: 18 Motion to Dismiss filed by Neil Richard Gaiman (Neville, Thomas) (Entered: 04/11/2025) |
| 04/11/2025 | 37 | Declaration of Dylan Schmeyer filed by Plaintiff Scarlett Pavlovich *In Opposition* re: 18 Motion to Dismiss (Attachments: # 1 Exhibit Exhibit 1 Gaiman Bio, # 2 Exhibit Exhibit 2 Neil Gaiman's Journal Breaking the Silence, # 3 Exhibit Exhibit 3 Fick Appearance D. Mass, # 4 Exhibit Exhibit 4 Companies House registration information for NEVERWHERE LLP, # 5 Exhibit Exhibit 5 2024-09-17 Palmer IG Post, # 6 Exhibit Exhibit 6 Affidavit of Service on Amanda Palmer, # 7 Exhibit Exhibit 7 Quit-Claim Deed, # 8 Exhibit Exhibit 8 Neil Gaiman Property Ownership Records, # 9 Exhibit Exhibit 9 Bluesky post 2023-11-12, |

| | | |
|---|---|---|
| | | # 10 Exhibit Exhibit 10 2020 Twitter Post,<br># 11 Exhibit Exhibit 11 - Edinburgh to Auckland _ Google Flights,<br># 12 Exhibit Exhibit 12 - Edinburgh to Madison _ Google Flight,<br># 13 Exhibit Exhibit 13 Fick admissions) (Neville, Thomas) (Entered: 04/11/2025) |
| 04/11/2025 | 38 | Declaration of Jack Wass filed by Plaintiff Scarlett Pavlovich *In Opposition* re: 18 Motion to Dismiss (Attachments:<br># 1 Exhibit Jack Wass Report,<br># 2 Exhibit Jack Wass CV) (Neville, Thomas) Modified on 4/14/2025: E-mail sent to counsel re: report. (lak) (Entered: 04/11/2025) |
| 04/11/2025 | 39 | Declaration of Scarlett Pavlovich filed by Plaintiff Scarlett Pavlovich *In Opposition* re: 18 Motion to Dismiss (Attachments:<br># 1 Exhibit Redacted Email) (Neville, Thomas) (Entered: 04/11/2025) |
| 04/24/2025 | | Set Telephone Pretrial or Status Conference: Telephone Pretrial Conference set for 5/28/2025 at 03:30 PM before Magistrate Judge Anita M. Boor. Please call (669) 254-5252 and enter meeting ID 161 2455 6623 when prompted. Wait to be admitted into the conference. The parties are advised that a Rule 26(f) conference shall occur not less than two weeks before the preliminary pretrial conference, and that the parties' report or reports must be filed not less than one week before the preliminary pretrial conference.[Standing Order Governing Preliminary Pretrial Conference attached] [Procedures for Requesting a Hearing to Resolve a Deposition Dispute attached] (rks) (Entered: 04/24/2025) |
| 04/28/2025 | 40 | Motion to Voluntarily Dismiss *Amanda Palmer* by Plaintiff Scarlett Pavlovich. (Cohen, Akiva) (Entered: 04/28/2025) |
| 04/30/2025 | 41 | Brief in Reply by Defendant Neil Richard Gaiman in Support of 18 Motion to Dismiss (Kravit, Stephen) (Entered: 04/30/2025) |
| 04/30/2025 | 42 | Declaration of David PH Jones KC filed by Defendant Neil Richard Gaiman re: 18 Motion to Dismiss (Kravit, Stephen) (Entered: 04/30/2025) |
| 05/02/2025 | 43 | **\*\* TEXT ONLY ORDER \*\***<br>Plaintiff has filed what she calls a "notice of voluntary dismissal" under Federal Rule of Civil Procedure 41 regarding her claims against Amanda Palmer. Dkt. 40 . But claims remain against the other defendant. When a party wishes to dismiss less than the entire action, the proper course is to file an amended pleading under Federal Rule of Civil Procedure 15(a) rather than a notice of dismissal under Rule 41. *See Taylor v. Brown*, 787 F. 3d 851, 857-58 (7th Cir. 2015). The court construes the notice as a motion for leave to amend the complaint, and so construed, the motion is GRANTED. Amanda Palmer is DISMISSED without prejudice. Plaintiff need not file a new complaint. Signed by District Judge James D. Peterson on 5/2/2025. (rks) (Entered: 05/02/2025) |
| 05/05/2025 | 44 | Summons Returned Executed by Plaintiff Scarlett Pavlovich as to 2 Complaint. (Jelenchick, Matthew) Modified on 5/6/2025. (lak) (Entered: 05/05/2025) |
| 05/21/2025 | 45 | Joint Preliminary Pretrial Conference Report by Plaintiff Scarlett Pavlovich (Jelenchick, Matthew) (Entered: 05/21/2025) |
| 05/28/2025 | | Minute Entry for proceedings held before Magistrate Judge Anita Marie Boor: Telephone Preliminary Pretrial Conference held on 5/28/2025 [00:53] (ckl) (Entered: 05/28/2025) |

ECF Western District of Wisconsin                    https://wiwd-ecf.sso.dcn/cgi-bin/DktRpt.pl?158275498738369-L_1_0-1

Case: 3:25-cv-00078-jdp    Document #: 54-3    Filed: 10/03/25    Page 8 of 8
Case: 25-2754    Document: 1-1    Filed: 10/03/2025    Pages: 27    (27 of 27)

| 05/29/2025 | 46 | ** TEXT ONLY ORDER ** The court held a telephonic preliminary pretrial conference on May 28, 2025. Both parties were represented by counsel. The court started by leading a discussion on case management. For the reasons discussed, the case is not stayed, and discovery is open. Regarding discovery, the court ordered the parties to meet and confer and propose for the court's consideration (1) a case management plan to address the manner and scope of discovery and (2) a standing protective order to govern the exchange of confidential information. The proposed discovery plan should set forth limits for both written discovery and depositions, taking into account Rule 26's requirement that discovery be proportional to the needs of the case. The parties should consider the ability to take depositions remotely and metrics for limiting depositions. The proposed discovery plan and proposed protective order are due June 18, 2025, to take into account the parties' initial disclosures. The court then set the case schedule, to issue in a separate order. The parties had no other topics to discuss. Signed by Magistrate Judge Anita Marie Boor on 8/29/2025. (rks) (Entered: 05/29/2025) |
| --- | --- | --- |
| 05/29/2025 | 47 | Pretrial Conference **Order** - Preliminary Pretrial Packet in cases assigned to District Judge James D. Peterson attached. Amendments to Pleadings due 7/28/2025. Dispositive Motions due 2/2/2026. Settlement Letters due 6/11/2026. Rule 26(a)(3) Disclosures and Motions in Limine due 6/18/2026. Responses due 7/2/2026. Final Pretrial Conference set for 7/15/2026 at 02:30 PM. Second Final Pretrial Conference set for 7/22/2026 at 02:30 PM. Jury Selection and Trial set for 7/27/2026 at 09:00 AM. Signed by Magistrate Judge Anita Marie Boor on 5/29/2025. (rks) (Entered: 05/29/2025) |
| 06/18/2025 | 48 | Joint Discovery Plan (Jelenchick, Matthew) (Entered: 06/18/2025) |
| 06/18/2025 | 49 | Motion for Protective Order *Agreed upon* by Plaintiff Scarlett Pavlovich. (Attachments: # 1 proposed Protective Order) (Jelenchick, Matthew) (Entered: 06/18/2025) |
| 06/26/2025 | 50 | ** TEXT ONLY ORDER ** Plaintiff's motion for the parties' agreed-upon protective order, Dkt. 49 , is GRANTED and the proposed protective order, Dkt. 49 -1, is entered as the court's own with the following modification: Paragraph B.1 is modified by striking "the person in good faith believes," to comply with *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999), which requires definitions concerning confidentiality to be objective, not subjective. Signed by Magistrate Judge Anita Marie Boor on 6/26/2025. (rks) (Entered: 06/26/2025) |
| 10/03/2025 | 51 | **ORDER** granting 18 Motion to Dismiss. Signed by District Judge James D. Peterson on 10/03/2025. (nln) (Entered: 10/03/2025) |
| 10/03/2025 | 52 | JUDGMENT entered in favor of defendant dismissing the case without prejudice. (nln) (Entered: 10/03/2025) |
| 10/03/2025 | 53 | NOTICE OF APPEAL by Plaintiff Scarlett Pavlovich as to 51 Order on Motion to Dismiss, 52 Judgment. Filing fee of $ 605, receipt number AWIWDC-3685773 paid. (Haygood, Lane) Modified on 10/3/2025: Appeal to the Seventh Circuit, not the Federal Circuit. Docketing Statement not filed. (lak) (Entered: 10/03/2025) |