No. 25-2754

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

**Scarlett Pavlovich**,

Plaintiff - Appellee

**v.**

**Neil Gaiman**,

Defendant - Appellant

---

**On Appeal from**
United States District Court for the Western District of Wisconsin

3:25-cv-78-jdp

---

**REPLY BRIEF OF APPELLANT SCARLETT PAVLOVICH**

---

SUBMITTED BY:

Lane A. Haygood
**Kamerman, Uncyk, Soniker & Klein, P.C.**
1700 Broadway
New York, NY 10019
(212) 400-4930
lhaygood@kusklaw.com

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................. 1

ARGUMENT

    I.    The TVPA Allows Civil Claims Based on Extraterritorial Conduct. ........3

    II.    *Forum non conveniens* Dismissal is Unavailable for TVPA Claims ............ 9

    III.    The District Court Misbalanced the Interest Factors. ...........................14

    IV.    New Zealand is Not an Adequate Alternative Forum. ...........................19

CERTIFICATE OF SERVICE........................................................... 22

CERTIFICATE OF COMPLIANCE ................................................23

# TABLE OF AUTHORITIES

## Cases

*Abafita v. Aldukhan*, 2019 WL 6735148, (S.D.N.Y. Apr. 4, 2019) ........................... 6

*Adhikari v. Kellogg Brown & Root, Inc. (Adikhari I)*, 845 F.3d 184, (5th Cir. 2017) ... 6

*Adikhari v. KBR Inc. (Adikhari II)*, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017) ....5

*David v. Signal Int'l, LLC*, 2015 WL 5254625 (E.D. La. Sept. 9, 2015) ................. 9

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) ...................................... 8

*Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) ............................... 6, 7

*Doe I v. Apple Inc.*, 2021 WL 5774224 (D.D.C. Nov. 2, 2021) ................................ 6

*F.C. v. Jacobs Solutions Inc.*, 790 F.Supp.3d 1158 (D.Colo. Jun. 26, 2025) ....... 4, 5, 7

*Francisco v. Susano*, 525 F. App'x 828 (10th Cir. 2013) .......................................... 8

*Gonzalez v. Chrysler Corp.*, 301 F.3d 377 (5th Cir. 2002) ...................................... 20

*Howe v. Goldcorp Invs. Ltd.*, 946 F.2d 944 (1st Cir. 1991) ...................................... 10

*La Seguridad v. Transytur Line*, 707 F.2d 1304 (11th Cir. 1983) ........................... 11

*Mia v. Kimberly-Clark Corp*, 2025 WL 752564 (D.D.C. Mar. 10, 2025) ................... 7

*Miles v. Illinois Cent. R. Co.*, 315 U.S. 698 (1942) ................................... 11

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) .................................... 3

*Panama R. Co. v. Johnson*, 264 U.S. 375 (1924) ..................................... 8

*Ratha v. Phatthana Seafood Co.*, No. 2016 WL 11020222 (C.D. Cal. Nov. 9, 2016) . 5, 6

*RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325 (2016) .................................... 3, 8

*Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019) .................................... 5

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417 (7th Cir. 2009)

*U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118 (D.D.C. 2024) .....7

*Williams v. Wilson*, 2005 WL 2100980 (W.D. Wis. Aug. 30, 2005) .......................16

**Statutes**

18 U.S.C. § 1595 ..................................................................................................... 4

**Other Authorities**

Torture Victim Protection Act of 1991, Pub.L. No. 102–256, 106 Stat. 73, §2(b)
   (1992) ...............................................................................................................12

# ARGUMENT[1]

## I. <u>The TVPA Allows Civil Claims Based on Extraterritorial Conduct.</u>

As the Supreme Court expressly held in *RJR Nabisco*, "[w]hile the presumption [against extraterritoriality] can be overcome only by a clear indication of extraterritorial effect, an express statement of extraterritoriality is not essential." *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 340 (2016). Rather, "context can be consulted as well." *Id. quoting Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 265 (2010) ("clear statement" rule does not require Congress to include text reciting that particular provisions apply abroad). In her Appellate Brief, Scarlett traced the history of Congress's amendments to the TVPA, establishing that Congress not only focused on extraterritorial conduct throughout its enactment and amendment of the statute, but specifically clarified the TVPA's extraterritorial reach *at the same time*, and *in the same amendment*, as it expanded the TVPA's civil remedy to *any* victim of *any* offense under the TVPA. Brief of the Appellant, pg. 13. Gaiman's responsive brief engages with none of that – and for good reason. Here

---

[1] Continuing to deploy the well-thumbed playbook of sexual predators from which he has drawn for decades, Gaiman devotes significant space in his responsive brief to the claim that Scarlett wanted or enjoyed his sexual attention. It is, of course, well-documented that victims of sexual assault often comfort and placate their abusers, ***especially*** while still in their effective power; Jen Percy's recently released *Girls Play Dead* powerfully documents and explores some of this dynamic, and should Scarlett be allowed the day in court that Congress wished her to have, expert testimony will establish as much for the jury. Because Gaiman's rather desperate mudslinging has nothing at all to do with the issues before the Court on this appeal, Scarlett will spill no further ink – and the Court should waste no further time – on it here.

the context is exquisitely clear: in a statute designed to address international conduct, enacted, in part and expressly because Congress did not believe that foreign legal systems provided sufficient remedies to deter the extraterritorial conduct the TVPA was intended to address, Congress simultaneously provided *both* that certain extraterritorial conduct was an offense under TVPA *and* that victims of such offenses could sue in U.S. courts. *See* 18 U.S.C. § 1595. Multiple courts have thus found the TVPA's civil provision unambiguously allows civil suits over conduct occurring abroad.

The District of Colorado's recent analysis in *F.C. v. Jacobs Solutions Inc.*, 790 F.Supp.3d 1158 (D.Colo. Jun. 26, 2025) is instructive. Judge Chung – like other jurists who have reached similar conclusions – recognized that *RJR Nabisco* required that the extraterritorial reach of the TVPA's civil action had to be analyzed separately from the extraterritorial reach of its criminal provisions. *Id.* at 1180. But the court had no trouble concluding that "[t]hat analysis reveals that Congress intended to imbue the TVPRA's private cause of action with extraterritorial jurisdiction." *Id.* First, the court – like the Fourth Circuit in *Howard* – pointed to § 1595's direct incorporation of extraterritorial predicates, giving a "clear, affirmative indication" that Congress intended Section 1595 to allow civil actions based on such offenses. *Id.* at 1181, *citing Roe v. Howard*, 917 F.3d 229, 241

4

(4th Cir. 2019). Indeed, the amendment history discussed above – and ignored by Gaiman in his brief – confirms that was an intentional choice by Congress. Second, the court pointed to the TVPA's purpose, structure, history, and context – all of the reasons for which "'the overwhelming majority of courts' have concluded that section 1596's jurisdictional grant applies to section 1595's private right of action." *Jacobs Sols.*, 790 F. Supp. 3d at 1181, *quoting Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASX), 2016 WL 11020222, at *6 (C.D. Cal. Nov. 9, 2016).

Indeed, while Gaiman's brief describes *Howard* as "the only appellate court decision on the issue to date," Appellee's Br. at 34, that is simply false.[2] The Fifth Circuit reached the same conclusion that *Howard* did. *See Adhikari v. Kellogg Brown*

---

[2] That was not Gaiman's only misrepresentation of the existing precedent on this issue. Astoundingly, Gaiman's brief cited *Adikhari v. KBR Inc. (Adikhari II)*, No. 16-CV-2478, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017) as contrary to *Howard* and in support of the claim that affording extraterritorial effect to § 1595 would be inconsistent with *RJR Nabisco*. Appellee's Br. at 34. But *Adikhari II* **found the exact opposite** and Gaiman's quote from that decision – "*RJR Nabisco*'s general rule is clear: a civil remedy that lacks clear indications of extraterritorial reach will redress only injuries experienced domestically, no matter the substantive provisions' scope. Section 1595 lacks those clear indications" – is wrenched **entirely** out of its specific context to imply otherwise. The Southern District of Texas, obviously, was not arguing with the Fifth Circuit's ruling, in the same action and only months earlier, that the 2008 amendments extended Section 1595's reach extraterritorially. Rather, the quoted portion **expressly** addressed **only** the scope of the TVPA's civil remedy **prior to** the 2008 amendments that added § 1596. *See Adikhari II*, 2017 WL 4237923, at *5 ("Plaintiffs' injuries, whatever their cause, were suffered only in foreign countries. They are, therefore, beyond the reach of the TVPRA **that existed at that time**. [paragraph break] **The Court's regret in reaching this holding is tempered by its recognition that Congress later extended the remedies for forced labor and trafficking to apply extraterritorially**").

Regretfully, Appellant cannot see any way for that misrepresentation to have been innocent. The portion quoted by Gaiman is in the same paragraph as Judge Ellison's immediate clarification that his holding applied only to the pre-2008 version of the TVPA, and specifically not to the post-2008 version, and is separated from the subsequent language by only a single, 26-word sentence. Citing to *Adikhari II* in support of the proposition that the post-2008 TVPA does not clearly indicate that its civil action applies extraterritorially is inexcusable.

*& Root, Inc. (Adikhari I)*, 845 F.3d 184, 204 (5th Cir. 2017) ("by conferring 'extra-territorial jurisdiction over any offense ... under' the TVPRA, § 1596 permits private parties to pursue a civil remedy under the TVPRA for extraterritorial violations … After § 1596's enactment, a TVPRA defendant in a civil suit could no longer rely on a previously available defense: the presumption against extraterritoriality"). Numerous district courts have reached the same conclusion. *See*, *e.g.*, *Abafita v. Aldukhan*, No. 116CV06072RMBSDA, 2019 WL 6735148, at *5 (S.D.N.Y. Apr. 4, 2019) (§ 1595 allows civil action for extraterritorial conduct), *report and recommendation adopted*, No. 16CIV6072RMBSDA, 2019 WL 4409472 (S.D.N.Y. Sept. 16, 2019); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASX), 2016 WL 11020222, at *5 (C.D. Cal. Nov. 9, 2016) (Congress clearly intended the civil provision apply extraterritorially); *Plaintiff A v. Schair*, No. 2:11-CV-00145-WCO, 2014 WL 12495639, at *6 (N.D. Ga. Sept. 9, 2014) ("Plaintiffs could salvage their claim if section 1596 could be retroactively applied").

Against the weight of that precedent, Gaiman invites this Court to create a circuit split in reliance on Judge Nichols' reasoning in *Doe I v. Apple Inc.*, No. 19-CV-03737 (CJN), 2021 WL 5774224, at *14 (D.D.C. Nov. 2, 2021) *aff'd on other grounds sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024).[3] But that

---

[3] As he did below, Gaiman misleadingly places his parenthetical explanation of *Doe*'s holding after his citation to the D.C. Circuit's affirmance, suggesting that the D.C. Circuit "h[e]ld[] that Congress did not

reasoning was thoroughly dismantled in both *U.S. ex rel. Hawkins v. ManTech Int'l Corp.*, 752 F. Supp. 3d 118, 135 (D.D.C. 2024) and *Jacobs Sols.*, 790 F. Supp. 3d at 1181–83 (point-by-point refutation of the arguments in *Doe I*). Indeed, as both cases pointed out, the TVPA ***itself*** directly refutes Gaiman's argument that the TVPA's use of the word "offenses" was meant to cabin its extraterritorial reach to only criminal provisions. *See Jacobs Sols.*, 790 F. Supp. 3d at 1183 ("the TVPRA's civil provision specifically ... uses the terms 'offense' and 'perpetrator'") (alteration in original), *quoting Hawkins*, 752 F. Supp. 3d at 134 n.16.

Nor does Gaiman meaningfully address the key structural differences between § 1595 and the civil RICO provision at issue in *RJR Nabisco*. Gaiman argues that the *RJR Nabisco* Court's focus on the fact that the civil remedy in RICO – unlike the civil remedy here – was narrower than RICO's substantive provisions was "limited to whether [that narrowing] supports a finding of extraterritoriality." Appellee's Br. at 42. Respectfully, that reading[4] cannot be squared with the text of *RJR Nabisco*, which expressly held that "by cabining RICO's private cause of action to particular kinds of injury … Congress signaled

---

authorize extra-territorial jurisdiction for civil remedies under § 1595." Appellee's Br. at 36. It did not. Rather, it affirmed the dismissal in *Doe* on other grounds, and never addressed Judge Nichols' fourth-alternative-conclusion in *Doe* that the case should *also* be dismissed on the basis that § 1595 had no extraterritorial reach. 96 F.4th 403.

[4] Also advanced by Judge Nichols in *Mia v. Kimberly-Clark Corp*, No. 22-cv-2353, 2025 WL 752564, at *7 (D.D.C. Mar. 10, 2025).

that the civil remedy is not coextensive with § 1962's substantive prohibitions."
579 U.S. at 350. It was precisely that narrowing that allowed the Court to depart
from the general rule it had articulated in *Panama R. Co. v. Johnson*, 264 U.S. 375,
392 (1924), that one statute's incorporation of another statute "serves to bring into
the latter all that is fairly covered by the reference." Gaiman likewise elides –
without citation to any authority – the difference between § 1595's allowance of a
civil action by any victim of an offense under the TVPA and RICO's provision for a
civil action only by *some* RICO victims but not others.

Finally, Gaiman's argument that the TVPA requires an injury because it
authorizes an award of "damages," which Gaiman contends must always be
compensatory, is simply wrong. As the Ninth Circuit explained in holding that
punitive damages are available under the TVPA, "[s]tanding alone, the term
"damages" is ambiguous: it could refer to compensatory damages, punitive
damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*,
662 F.3d 1091, 1096 (9th Cir. 2011). An award of nominal damages is likewise
available under the TVPA. *Cf. Francisco v. Susano*, 525 F. App'x 828, 829 (10th
Cir. 2013) (reviewing verdict awarding nominal damages of $1 on TVPA claim and
finding that the trial court erred in ruling compensatory and punitive damages
unavailable); *David v. Signal Int'l, LLC*, No. CIV.A. 08-1220, 2015 WL 5254625,

8

at *2 (E.D. La. Sept. 9, 2015) (amending jury verdict to award nominal damages where jury had previously awarded $0 in damages against defendants found liable under TVPA). Neither nominal nor punitive damages are intended to compensate for an injury, and nominal damages are awarded "even where there is no injury." *David*, 2015 WL 5254625, at *2. An injury is not an element of a TVPA claim, and – directly contrary to the RICO context – it therefore makes no sense at all to ask whether the "statutory injury" must be domestic.

Simply put, while *RJR Nabisco* unquestionably provides the *test* by which the Court must determine whether § 1595 allows Scarlett to bring a civil action based on Gaiman's conduct in New Zealand, its holding with respect to RICO's civil action does not provide the *answer* to that question. Rather, this Court should join the multiple other circuits and district courts in holding that the TVPA allows such claims.

## II.    *Forum non conveniens* Dismissal is Unavailable for TVPA Claims

Given Congress's determination that a plaintiff may bring claims based on foreign conduct, the Supreme Court's holding in *National City Lines*, and the circuit and district court precedent cited in Scarlett's principal brief, compel a determination that common law *forum non conveniens* dismissal is unavailable to prevent a plaintiff from bringing the very claims Congress specifically authorized.

9

Gaiman's response is, primarily, that the Court should ignore *National City Lines* because it purportedly "has been limited by statutory changes and by subsequent case law." Brief of Appellee at pg. 26. But Gaiman cites no Supreme Court case overruling *National City Lines I*, only a First Circuit case – *Howe v. Goldcorp Invs. Ltd.*, 946 F.2d 944 (1st Cir. 1991) – that held *National City Lines I* inapplicable to a claim under the securities laws. *Howe*, 946 F.2d 944, 945. *Howe*, of course, cannot override Supreme Court precedent.[5] But even were the First Circuit somehow capable of reversing *National City Lines*, it did not do so. Rather, the First Circuit in *Howe* **distinguished** *National City Lines*, explaining that the statute at issue in *National City Lines* provided "especially strong reasons for believing Congress did not want to permit courts to transfer cases, irrespective of convenience." *Id.* at 948. In contrast, there was no particular reason to find Congress had a similar intent with respect to the federal securities laws, and the court "believe[d] that difference [wa]s significant." *Id.* at 949. The First Circuit, in other words, conducted exactly the type of inquiry that the Eleventh Circuit urged in *La Seguridad*, ultimately concluding that Congress had not imposed any special duty on the U.S. courts to hear securities fraud claims involving foreign conduct.

---

[5] *Howe* did note that the Supreme Court recognized that Congress's later adoption of 28 U.S.C. § 1404(a), which statutorily provided for inter-district transfers within the U.S. court system, superseded *National City Lines I* with respect to such transfers. *Howe*, 946 F.2d at 949.

*La Seguridad v. Transytur Line*, 707 F.2d 1304, 1310 n. 10 (11th Cir. 1983), *abrogated on other grounds by Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043 (11th Cir. 2019).

The significant difference relied upon by *Howe* simply does not exist here, because the Court is not merely presented with a statute that generally opens the court to private claims, but with one that deliberately and as a policy choice does so for claims based on foreign conduct. That is, of course, not the usual outcome when Congress creates a private right of action, and it was *expressly* motivated here by the concern that foreign jurisdictions would not properly adjudicate claims within the bounds of the TVPA. *See* Brief of Appellant, pg. 15. As Scarlett argued in her principal brief, because every TVPA case occurring abroad would necessarily involve foreign witnesses and evidence, allowing *forum non conveniens* dismissal of such cases would effectively abrogate Congress's policy choice to open U.S. courts to such claims. As the Supreme Court held in *Miles v. Illinois Cent. R. Co.*, 315 U.S. 698 (1942) – a case Gaiman notably fails to address – Congress's choice precludes the courts from substituting their view that "the normal expense and inconvenience of trial in permitted places" would be "inequitable and unconscionable."

11

The rule is straightforward: where the defendant is a U.S. citizen or permanent resident, and where Sec. 1596 has conferred extraterritorial jurisdiction over the underlying conduct, Congress has provided that the resulting civil remedy under Sec. 1595 shall be adjudicated in the District Court of the United States where the defendant resides. Common-law forum non-conveniens cannot override such a statutory directive.

Gaiman also argues that cases analyzing the Torture Victim Protection Act should control – and he is absolutely right that the Torture Victim Protection Act is an important comparative datapoint. He is simply wrong about the way it cuts. Because far from imposing an equivalent duty on U.S. courts to specifically adjudicate claims based on foreign conduct regardless of whether an adequate alternative foreign forum exists, the Torture Victim Protection Act *specifically* directs U.S. courts to decline jurisdiction over such claims if there is an adequate alternative forum in which the plaintiff has not exhausted its remedies. Torture Victim Protection Act of 1991, Pub.L. No. 102–256, 106 Stat. 73, §2(b) (1992) (codified at 28 U.S.C. § 1350 note) ("(b) EXHAUSTION OF REMEDIES.—A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred"). In light of that specific Congressional directive, any

argument that *forum non conveniens* is categorically unavailable in Torture Victim Protection Act claims would be frivolous, because Congress clearly and expressly was not imposing any special duty on U.S. courts to hear claims under that statute even if an alternative forum was available. The absence of any similar provision in the TVPA is telling: Congress knew full well how to express its willingness for claims sounding in foreign human rights violations to be shunted out of American courts despite adopting an extraterritorial private right of action, and yet it chose not to do so when it enacted the TVPA. That is yet further confirmation that Congress intended to displace the standard *forum non conveniens* analysis when it opened U.S. courts to TVPA claims based on foreign conduct.

Finally, Gaiman's argument that Scarlett waived this argument cannot survive review of the briefing below. In her opposition to Gaiman's motion to dismiss, Scarlett specifically argued that the standard *forum non conveniens* analysis could not be "superimposed onto" the TVPA's "statutory regime specifically designed to allow victims of foreign conduct to seek redress in United States courts ... [because to do so] would be to essentially write that policy choice out of existence." *See* Brief of Appellant at pg. 27. Thus, Scarlett argued, where "[t]he United States [] has directed that claims such as Scarlett's should be heard here, in

U.S. courts, as a matter of U.S. public policy[, t]he doctrine of *forum non conveniens* cannot override that." *Id.* The argument was not waived.

## III. <u>The District Court Misbalanced the Interest Factors.</u>

In her principal brief, Scarlett demonstrated that the court below had mis-balanced the relevant public and private interest factors, failing to assign any weight at all to the United States' significant policy interests and treating the private interest factors as box-checking exercises rather than analyzing the *relative* convenience of the parties and fora. Gaiman's responsive brief essentially fails to engage with *any* of that showing, instead simply describing what the court below did do and asserting – without further meaningful argument – that the district court reached the correct conclusion.[6] That is no basis to affirm the district court's erroneous order.

For instance, with respect to the public interest factors, Gaiman – like the court below – simply ignores the public policy interest evidenced by Congress's decision to create an extraterritorial right of action and Congress's express policy statements enacted as part of the TVPA. Appellee's Br. at 24 (simply repeating the district court's analysis and statement that "even if the TVPA civil remedy

---

[6] The appellee's brief also devotes extensive time to making a factual argument concerning the WhatsApp messages (Appellee's Br. At 4-8). This is entirely irrelevant to the legal matter regarding the forum question and asks this Court to prejudge the case on the merits.

provision does apply outside the United States, that would not be dispositive"
because "whether a plaintiff is asking the court to apply domestic or foreign law is
just one factor among many") (cleaned up). Gaiman's utter silence with respect to
the public policy concerns highlighted in Scarlett's principal brief is even more
telling given his reliance elsewhere on *Wiwa*, *see* Appellee's Br. at 30-32 (the
dismissal had failed to recognize that in passing the statute, "Congress has
expressed a policy of U.S. law favoring the adjudication of such suits in U.S.
courts." 226 F.3d at 106.)

The Second Circuit emphasized that policy meant "such suits should not be
facilely dismissed on the assumption that the ostensibly foreign controversy is not
our business." *Id.* That facile "assumption that the ostensibly foreign controversy
is not our business," of course, was the sum-total of the district court's analysis of
the public interest factors. *See* Brief of Appellant, Appendix Tab 1, internal pp. 9-
14. The district court assigned no weight whatsoever to Congress's express
determination—codified in the TVPA's text, structure, and legislative findings—
that claims arising from extraterritorial trafficking by U.S. citizens and residents
should be heard in American courts. Under *Wiwa*, that omission alone warrants
reversal. Gaiman's responsive brief compounds the error: he devotes a single
paragraph to the public interest factors, simply parroting the district court's

conclusion that congressional policy is "just one factor among many." Appellee's Br. at 24. That is not analysis—it is the very "facile assumption" *Wiwa* forbids. Here, as in *Wiwa*, Congress's contrary policy declaration means that the public interest factors sharply favor retaining jurisdiction.

Gaiman's response on the private interest factors is similarly deficient. In her principal brief, Scarlett cited multiple cases holding that the availability of compulsory process is a non-factor in the absence of at least some evidence that any witness would be unwilling to testify without compulsory process. *See* Brief of Appellant, pp. 27-28; s*ee also Williams v. Wilson*, No. 05 C 227 S, 2005 WL 2100980, at *3 (W.D. Wis. Aug. 30, 2005) (compulsory process a non-issue where defendant provided no evidence that any witness located in Australia would be unwilling to testify without compulsory process). In response, Gaiman neither argues with those cases nor suggests that he provided any evidence that compulsory process would be necessary; instead he simply lists witnesses he contends will be necessary without offering any reason at all to think they would not willingly appear. Appellee's Br. at 17-21.

Similarly, and even ignoring the lack of evidence that compulsory process would be needed, in her principal brief Scarlett showed that the court below erred when it failed to balance Gaiman's laundry list of witnesses against the fact that *the*

key non-party witness, Amanda Palmer, will both only be subject to compulsory process in the United States *and* has proven likely to be unwilling to appear without compulsory process. *See* Brief of Appellant, pp. 31-32. That issue goes entirely unaddressed in Gaiman's responsive brief. And while Gaiman complains that Scarlett described his list of witnesses as his friends and employees, review of Gaiman's witness chart confirms that description: he cites "Guests at Amanda Palmer's home," "Individuals who watched Gaiman's child," R.C., "Gaiman's assistant during the relevant time period]," Gaiman's "[p]ersonal assistant[s]" X.O. and E.B., Gaiman's neighbors H.H. and E.A., Gaiman's Realtor S.E.B., Gaiman's nanny V.S., and Gaiman's housekeeper L.B. He also identified "ferry company employees" and "hotel employees," without any particular reason to believe they would have relevant information, and unspecified "individuals familiar with Appellant" and "Appellant's friends." When weighed against the need for Palmer's testimony, that is no basis to find that the need for compulsory process tips in Gaiman's favor rather than Scarlett's.

Gaiman likewise has no answer at all to Scarlett's argument that the only meaningful documentary evidence he identified as relevant – Scarlett's medical and financial records – are equally available to him in Wisconsin. And Gaiman offers no argument at all in response to Scarlett's showing that as a practical

matter, litigating in New Zealand would be *vastly* more inconvenient to her, as a resident of Scotland, than litigating in Wisconsin. Gaiman does not in any way dispute Scarlett's point that he is vastly better resourced than she is, leaving him in a far better position to bear any inconvenience of litigating in his home state of Wisconsin than Scarlett would be to bear the inconvenience of proceeding in New Zealand. And Gaiman has no response at all to Scarlett's argument that the interests of justice strongly favor retaining jurisdiction given that Gaiman would only be facing a potential slap on the wrist in New Zealand.

Because the court below failed to balance the convenience of the fora and parties against each other, and instead conducted only a box-checking exercise, it necessarily abused its discretion when it ruled that the private interest factors favored dismissal. If this Court finds that the doctrine applies at all and therefore engages in the required balancing, it should find that the private interest factors tip in Scarlett's favor. And, regardless, this Court should hold—as the *Wiwa* court did in connection with a Torture Victim Protection Act claim—that any private interest in dismissal cannot sufficiently outweigh either the United States's significant policy interest in having Scarlett's claims heard in American courts, or the interest of justice more generally.

## IV.  <u>New Zealand is Not an Adequate Alternative Forum.</u>

Finally, the Court should find that in all events New Zealand is not an adequate alternative forum for a plaintiff in Scarlett's position: a non-resident of New Zealand who suffered injuries for which the only compensation New Zealand law provides is mental health therapy only available to New Zealand residents.

The parties agree that New Zealand law offers no other compensation for Scarlett's injuries, and they further agree that Scarlett has alleged ongoing injuries for which she has not been compensated under New Zealand or any other law. Gaiman's position is that New Zealand is an adequate alternative forum because *if* Scarlett were to move back to New Zealand (which she has no intention of ever doing) New Zealand could provide her with mental health treatment. But on the currently extant facts, New Zealand offers only a remedy that all parties agree is tantamount to no remedy at all. And Gaiman cites no authority whatsoever for the proposition that Scarlett is obligated to move internationally[7] to change that into a meaningful remedy. Nor does Gaiman cite any authority for the proposition that Scarlett's past mental health treatment in New Zealand suffices as a remedy for her *ongoing* injuries. To the contrary, it should be obvious that mental health treatment

---

[7] Though it is not relevant to the analysis, Gaiman asks why Scarlett brought her claim in the United States rather than the United Kingdom. Appellee's Br. at 12. The answer is simple: the United States was the only jurisdiction in which she could bring claims against *both* Gaiman and Palmer; Palmer is not subject to jurisdiction in the United Kingdom.

as a remedy for vicious rape and human trafficking is no remedy at all if obtaining that treatment requires the victim to remain trapped in the area where she was trafficked. Similarly, Gaiman argues that New Zealand allows punitive damages,[8] and that should be sufficient. But Gaiman cites no precedent supporting that argument. It is one thing to hold, as other circuits have, that the adequacy analysis must respect the policy choices of another sovereign with respect to what qualifies as adequate compensation for injury suffered within its jurisdiction. *See Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir. 2002) (need to respect Mexico's policy choices in setting wrongful death damages: "It would be inappropriate—even patronizing—for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims"). It would be another thing entirely to find that an award not even *intended by the forum* to effectively compensate the victim of a tort could be "adequate" under *Piper Aircraft*, and this Court should not do so here. *Cf. Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 423 (7th Cir. 2009) ("Of course, each *forum non conveniens* case is fact-specific, and we do not say that an alternative forum is necessarily adequate to resolve a tort plaintiff's claims simply because the defendant can point to some conceivable contract remedy"). In this case, New Zealand has not made a policy choice that certain damages (e.g., punitive or exemplary) are available

---

[8] Gaiman repeatedly identifies that as "punitive or exemplary damages." *See* Appellee's Br. at 9, 12. Those, of course, are synonyms.

to adequately compensate trafficking victims; New Zealand simply has no mechanism to adjudicate such claims at all, as they arise solely out of the statutory law of the United States.

The Court should therefore find that on these facts, and with respect to this plaintiff, New Zealand is not an adequate alternative forum.

SUBMITTED BY:

/s/Lane Andrew Haygood
Kamerman, Uncyk, Soniker & Klein, P.C.
1700 Broadway
New York, NY 10019
Texas Bar No. 24066670
432.279.0411
lhaygood@kusklaw.com

# CERTIFICATE OF SERVICE

I certify that on January 12, 2026, the foregoing document was forwarded via electronic filing on today's date to the following parties/counsel via the Court's electronic filing system:

        Andrew B. Brettler
        Steven Kravit
        Brian T. Fahl

                        /s/Lane Andrew Haygood
                        Lane A. Haygood
                        Attorney for Scarlett Pavlovich

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Scarlett Pavlovich, Plaintiff-Appellant, furnishes the following in compliance with Fed. R. App. Proc. 32(a)(7):

1. I hereby certify that this brief conforms to the rules contained in Fed. R. App. Proc. 32(a)(7) for a brief produced with a proportionally-spaced font.

2. The length of the brief is 5,354 words.

Dated January 12, 2026.


/s/Lane Andrew Haygood
Lane A. Haygood
Attorney for Scarlett Pavlovich