In the

# United States Court of Appeals
## For the Seventh Circuit

––––––––––––––––

No. 25-2754

SCARLETT PAVLOVICH,

*Plaintiff-Appellant,*

*v.*

NEIL GAIMAN,

*Defendant-Appellee.*

––––––––––––––––

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:25-cv-00078 — **James D. Peterson**, *Chief Judge.*

––––––––––––––––

ARGUED APRIL 8, 2026 — DECIDED JUNE 29, 2026

––––––––––––––––

Before SCUDDER, ST. EVE, and KOLAR, *Circuit Judges*.

KOLAR, *Circuit Judge*. Scarlett Pavlovich worked for Neil
Gaiman and his family in New Zealand. She sued Gaiman in
the Western District of Wisconsin, after he moved there, al-
leging he repeatedly sexually assaulted her while living in
New Zealand in violation of Wisconsin law and the federal
Trafficking Victims Protection Act. The district court dis-
missed her complaint under *forum non conveniens*—a discre-
tionary doctrine that permits a federal district court to dismiss

an action over which it would normally have jurisdiction—because it concluded New Zealand is the more convenient forum to hear this dispute. We find no abuse of discretion in the district court's decision. Thus, we affirm its judgment dismissing this action without prejudice.

## I. Background

We recount the facts as Pavlovich alleged them, drawing all inferences in her favor, because we must for a motion to dismiss. *Doe v. Purdue University*, 928 F.3d 652, 656 (7th Cir. 2019).

### A.  Factual Background

Pavlovich is a citizen of New Zealand, though she presently lives in Scotland. Gaiman is a citizen of the United Kingdom, though he presently lives as a lawful permanent resident in Wisconsin. During this timeframe, Gaiman, his wife, their young child, and Pavlovich lived in New Zealand. Gaiman and his wife kept separate homes "near each other" on an island about sixteen miles from Auckland.

Pavlovich first became involved with Gaiman's family in 2020, when she met Gaiman's wife. Pavlovich was then 22 years old, economically distressed, and intermittently unhoused. During this time, she ran occasional personal errands for Gaiman's wife and was only sometimes paid for this work.

In early 2022, Gaiman's wife asked Pavlovich to babysit the couple's child at Gaiman's house for a weekend. It was then, at his home, that Pavlovich first met Gaiman, and he first sexually assaulted her. Shortly after, Gaiman's wife formally hired Pavlovich as a live-in nanny in both her and Gaiman's homes. Desperate for secure employment and housing, Pavlovich took the job. For weeks, she endured

repeated, brutal assaults by Gaiman, which ended only after he left for Scotland three weeks later.

After these assaults, Pavlovich became suicidal and sought psychiatric care in New Zealand. She also filed a criminal complaint against Gaiman in New Zealand, though she alleges the authorities "took no action" on her complaint because Gaiman's wife "refused to talk to them."

### B. Procedural Background

Pavlovich sued Gaiman and his wife in the Western District of Wisconsin in 2025. She brought nine claims, four based on federal law and five based on Wisconsin common law. Her federal claims alleged Gaiman and his wife violated the federal Trafficking Victims Protection Act (the Act) by committing sex trafficking, forced labor, trafficking of forced labor, and by conspiring to commit trafficking. 18 U.S.C. §§ 1591 (sex trafficking), 1589 (forced labor), 1590 (trafficking in forced labor), 1594 (conspiracy). She sought money damages under the Act's civil-remedy provision. Her state-law claims assert that Gaiman assaulted, battered, and intentionally or negligently subjected her to emotional distress, and that his wife acted negligently.[1]

Gaiman moved to dismiss on two grounds relevant to this appeal. First, he argued Pavlovich's action should be dismissed under the doctrine of *forum non conveniens*. *Forum non conveniens* is a common-law doctrine that permits a federal

---

[1] Pavlovich eventually dismissed Gaiman's wife from the Wisconsin action and sued her in her home state, Massachusetts. *Pavlovich v. Palmer*, 2026 WL 353496 (D. Mass. Feb. 6, 2026). The district court there ultimately dismissed under *forum non conveniens*. *Id.* at *5. Pavlovich appealed that order to the First Circuit. Her appeal remains pending.

district court to dismiss a suit over which it would normally have jurisdiction if it determines doing so best serves the convenience of the parties and the interests of justice. *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). Second, Gaiman argued Pavlovich failed to state a federal claim on which relief could be granted because, in his view, the civil-remedy provision of the Act does not apply extraterritorially—that is, to conduct that occurs outside the United States. And because he asked the court to dismiss Pavlovich's federal claims on these grounds, he urged the court to then relinquish supplemental jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(c)(3) (a district court "may decline to exercise supplemental jurisdiction over a claim" if it dismisses "all claims over which it has original jurisdiction").

The district court ultimately dismissed under *forum non conveniens*, concluding that New Zealand is an available, adequate, and more convenient forum with a stronger connection to this dispute than the United States. Because it dismissed the action on this basis, the district court did not address whether the Act's civil-remedy provision applies extraterritorially. Pavlovich appealed.

## II. Discussion

A district court may dismiss under *forum non conveniens* if it makes two determinations. It must determine that "an alternative and adequate forum is available" to the plaintiff. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 807 (7th Cir. 2016). And it must determine—by balancing certain public- and private-interest factors—that the alternative forum is more convenient and has a stronger connection to the dispute than the United States. *American Dredging Co. v. Miller*, 510 U.S. 443, 448–49 (1994). We review a district court's dismissal under the

doctrine for abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). A district court might abuse its discretion if, for example, it completely ignores a relevant factor. *See Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 424 (7th Cir. 2009). Otherwise, we will affirm so long as dismissal was "within the realm of appropriate conclusions." *Deb*, 832 F.3d at 806.

We conclude the district court did not abuse its discretion and affirm. Because we affirm on *forum non conveniens*, we need not address whether Pavlovich has adequately stated a claim under the Act.

### A. Availability and Adequacy

Everyone agrees New Zealand is available as a forum because Gaiman has consented to being sued there. *See In re Factor VIII or IX Concentrate Blood Products Litigation*, 484 F.3d 951, 957 (7th Cir. 2007). But the parties dispute whether the district court abused its discretion in concluding New Zealand is adequate.

"An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly." *Id*. (citation omitted). An alternative forum is not inadequate merely because its law or remedies disfavor the plaintiff. *Piper Aircraft*, 454 U.S. at 247. Rather, only if the remedy in the alternative forum is "so clearly inadequate or unsatisfactory that it is no remedy at all" will we conclude the forum is inadequate. *Stroitelstvo Bulgaria*, 589 F.3d at 422 (quoting *Piper Aircraft*, 454 U.S. at 254).

Pavlovich asserts that New Zealand offers her "no remedy at all." She alleges the only compensation that New Zealand's unique accident-compensation scheme provides is mental-

health treatment, which she is ineligible for while she lives in Scotland. She further asserts that should she sue in New Zealand, she may be required to post security for the cost of Gaiman's defense, which she cannot afford.

But Pavlovich admits that New Zealand's scheme would permit her to seek punitive damages in a lawsuit for what her expert witness calls "truly outrageous conduct." Thus, even assuming Pavlovich cannot get any compensatory damages under New Zealand's unique compensation structure, nor obtain treatment through that structure, punitive damages would provide her at least some remedy.

Pavlovich bats away punitive damages because, in the American system, punitive damages are not to compensate but to punish. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 48 (1979) ("Punitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." (cleaned up)). True enough, but Pavlovich cites no authority suggesting that we must ignore punitive damages in this context, or that such damages are "clearly inadequate or unsatisfactory" for the purposes of *forum non conveniens*. The question for us, after all, is whether Pavlovich will be deprived of "any" remedy in the other forum. *Piper Aircraft*, 454 U.S. at 254. Regardless of their "purpose," punitive damages are a remedy available to Pavlovich in New Zealand.

Nor are we persuaded that requiring Pavlovich to post security to sue renders New Zealand an inadequate forum. Pavlovich cites no authority saying such requirements render a forum necessarily inadequate. Our circuit and others have deemed other forums adequate despite imposing

burdensome fees. *Stroitelstvo Bulgaria*, 589 F.3d at 424 (collecting cases). For example, in *Stroitelstvo Bulgaria*, we held a fee equal to 4% of damages claimed—which netted out to $1.2 million—did not render a forum inadequate. *Id.* Plus, the fee Pavlovich fears is not mandatory. According to her expert, New Zealand's High Court has *discretion* to require a plaintiff to give security for anticipated costs as a condition of proceeding with a claim. Because we cannot be sure Pavlovich will even need to clear this hurdle to sue for punitive damages, we cannot conclude this potential hurdle renders New Zealand inadequate for the purposes of *forum non conveniens.*

Having determined the district court did not abuse its discretion in concluding New Zealand is available and adequate as a forum, we next consider whether the court abused its discretion in balancing the public- and private-interest factors.

### B.  Public and Private Factors

We first consider how much weight to give Pavlovich's choice of forum. When a plaintiff sues in her home forum, we disturb her choice "only if the balance of public and private interest factors strongly favors the defendant." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). But this presumption "applies with less force" when "the plaintiff is suing far from home" because "the risk that the chosen forum really has little connection to the litigation is greater." *In re Factor VIII*, 484 F.3d at 956 (citation omitted). And when a foreign plaintiff sues a U.S. resident, the presumption becomes "little more than a tie breaker" after we "weigh the relative advantages and disadvantages of the alternative forums." *Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357–58 (7th Cir. 2022) (quoting *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009)). Because Pavlovich is a foreign

plaintiff suing a U.S. resident, we give her preference only marginal weight.

Next, we turn to the private-interest factors. The private factors basically require that we determine which forum is more convenient for the parties. *See American Dredging Co.*, 510 U.S. at 447–48. We examine "practical problems that make trial of a case easy, expeditious and inexpensive," like, for example, which forum has better access to witnesses, documents, and other evidence. *Id.* at 448 (citation omitted).

Pavlovich argues the district court abused its discretion in concluding that litigating in New Zealand would offer better access to evidence. She notes that New Zealand's judiciary may, to aid litigation in the United States, grant requests to compel specific depositions for witnesses in New Zealand or to produce certain documents located in New Zealand. She argues that the compulsory process, moreover, would be unnecessary for Gaiman, as his proposed witnesses are his own employees and acquaintances. And she notes that Gaiman's wife, a key witness, is not subject to New Zealand's jurisdiction because she is not a citizen there and now lives in the United States.

The district court's contrary conclusion—that New Zealand offers better access to evidence than the United States—was not an abuse of discretion. For one, Pavlovich's expert on New Zealand law acknowledged that New Zealand does not permit general discovery for out-of-country litigation, and that compulsory depositions or productions of documents are permitted only with leave from the judiciary. So while Pavlovich is right that the judiciary might permit such discovery for her suit in the United States, such discovery—for her or Gaiman—is not guaranteed. Next, though Pavlovich says

Gaiman's wife is not subject to New Zealand's jurisdiction, she ignores that Gaiman's wife has consented to being sued there. *Pavlovich*, 2026 WL 353496 at *3 ("It is undisputed that [Gaiman's wife] stipulated to service of process in New Zealand.").

As for the public-interest factors, we focus here on which forum has the stronger connection to this dispute. *American Dredging Co.*, 510 U.S. at 448. Pavlovich argues the district court abused its discretion in concluding the United States has little to no interest in this dispute. She says that the district court gave short shrift to Congress's "preference" for hearing her federal claims in the United States. In her view, Congress—by applying the civil-remedy provision of the Act extraterritorially—has expressed a "strong national interest" in punishing the evil of human trafficking, and this interest deserves "significant weight" in a *forum non conveniens* analysis.

Of course, her argument hinges on us agreeing that the Act applies extraterritorially. Only the Fourth Circuit has directly addressed this question; our circuit has not. *See Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019) (holding the civil-remedy provision applies abroad "to the extent that the particular predicate offense supporting a specific claim applies extraterritorially"). Rather than address this thorny issue for the first time, we assume without deciding that the civil-remedy provision applies extraterritorially. *See Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1168 (9th Cir. 2022) ("[W]e assume without deciding that Plaintiffs are correct and that [the Act] permits a private cause of action for extraterritorial violations[.]"). And we hold that even presuming it applies abroad, meaning that Congress has expressed a public-policy interest in hearing disputes like Pavlovich's in the United States, the district

court did not abuse its discretion in concluding that New Zealand has a stronger connection to this dispute.

New Zealand has a weighty public-policy interest in ensuring its citizens use its one-of-a-kind accident-compensation scheme to redress harms suffered on its soil. And retaining jurisdiction over this case despite New Zealand's interests implicates concerns of international comity—mutual courtesy, respect, and goodwill among nations. *See RJR Nabisco v. European Community*, 579 U.S. 325, 347 (2016) (noting that "to apply [U.S.] remedies" to foreign claims "would unjustifiably permit their citizens to bypass their own less generous remedial schemes" (citation omitted)); *cf. Cisco Systems, Inc. v. Doe I*, 609 U.S. ----, *8 (June 23, 2026) (declining to permit plaintiffs to bring an action under international law in the United States, in part because such cases "by their nature" have "detrimental foreign policy consequences"). And while the Supreme Court has yet to explicitly consider international comity in *forum non conveniens*, Justices have nevertheless described the doctrine as "grounded in … international comity principles." *Abitron Austria GmbH v. Hetronic International, Inc.*, 600 U.S. 412, 445 (2023) (Sotomayor, J., concurring); *see also RJR Nabisco*, 579 U.S. at 362 (Ginsburg, J., concurring) (noting that comity concerns about applying a U.S. remedy abroad may be addressed through *forum non conveniens*).

Our circuit has reasoned similarly. We have said the risk of "offending principles of international comity" may be "addressed under the auspices of the doctrine of forum non conveniens." *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 356 (7th Cir. 2015). And we have expressly considered international comity in balancing the public-interest factors. *Fischer*

*v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 869 (7th Cir. 2015) (affirming dismissal for *forum non conveniens*, in part "given the weight of international comity concerns"). Nor are we alone among the circuits. *See Cooper v. Tokyo Electric Power Co., Inc.*, 860 F.3d 1193, 1211 (9th Cir. 2017) ("[T]he policy considerations addressed in the international comity discussion may also be relevant [for *forum non conveniens*]."); *Ford v. Brown*, 319 F.3d 1302, 1304 n.3 (11th Cir. 2003) (noting that international comity concerns are "intertwined" with *forum non conveniens* analyses); *see also Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir. 2002) (affirming *forum non conveniens* dismissal because "we see no warrant for us, a United States court, to replace the policy preference of the Mexican government with our own view of what is a good policy for the citizens of Mexico").

Pavlovich does not address whether, in retaining jurisdiction and applying the civil-remedy provision of the Act, we would do violence to international comity. But the risk is apparent. New Zealand's compensation scheme offers more limited remedies than those in the United States. Enacting and enforcing this scheme is New Zealand's public-policy prerogative. Thus, even assuming the civil-remedy provision applies extraterritorially, we hold the district court did not abuse its discretion in concluding New Zealand has a stronger connection to this dispute.

We conclude with a note about waiver. Pavlovich argued in her briefs on appeal that, when Congress has applied a remedy extraterritorially, a district court cannot dismiss for *forum non conveniens*. But she has waived this issue twice over. First, she never raised this issue below. Instead, she argued only that Congress's preference for hearing claims like hers in

the United States is a public-interest factor weighing against dismissal. Issues raised for the first time on appeal are typically waived. *Allen v. City of Chicago*, 865 F.3d 936, 943 (7th Cir. 2017). Second, she expressly waived it at oral argument. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008). In the civil context waiver is "the end of the line." *Crothersville Lighthouse Tabernacle Church, Inc. v. Church Mutual Insurance Co., S.I.*, 168 F.4th 483, 490 (7th Cir. 2026). Thus, we consider this complex question no further.

### III. Conclusion

For the reasons set forth above, we AFFIRM the district court's judgment dismissing this action for *forum non conveniens.*