**No. 25-2754**

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

**SCARLETT PAVLOVICH,**
*Plaintiff-Appellant,*

**v.**

**NEIL GAIMAN,**
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Wisconsin
No. 3:25-cv-00078 — The Honorable James D. Peterson, Chief Judge

**PETITION OF PLAINTIFF-APPELLANT FOR
PANEL REHEARING AND REHEARING EN BANC**

**Lane A. Haygood**
*Counsel of Record*
**KAMERMAN, UNCYK, SONIKER & KLEIN, P.C.**
1700 Broadway
New York, NY 10019
(212) 400-4930
lhaygood@kusklaw.com
Texas Bar No. 24066670

*Counsel for Plaintiff-Appellant Scarlett Pavlovich*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>25 2754</u>

Short Caption: <u>Pavlovich v. Gaiman</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>Scarlett Pavlovich</u>

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>Kamerman, Uncyk, Soniker & Klein, PC</u>

(3)   If the party, amicus or intervenor is a corporation:

i)   Identify all its parent corporations, if any; and

<u>n/a</u>

ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>n/a</u>

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>/s/ Lane Haygood</u>   Date: <u>07/13/2026</u>

Attorney's Printed Name: <u>Lane A. Haygood</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑  **No** ☐

Address: <u>1700 Broadway, 16th Floor</u>

<u>New York, New York 10019</u>

Phone Number: <u>212 400 4930</u>   Fax Number: _____

E-Mail Address: <u>lhaygood@kusklaw.com</u>

rev. 12/19 AK

## STATEMENT OF COUNSEL UNDER FEDERAL RULE OF APPELLATE PROCEDURE 40(b)(1)

I express a belief, based on a reasoned and studied professional judgment, that the panel's decision is contrary to the following decisions, and that this appeal presents the following reasons for granting rehearing, or, in the alternative, rehearing en banc:

1. The panel decision conflicts with decisions of other intermediate courts of appeal. Fed. R. App. P. 40(b)(1)(C). The panel's decision conflicts with *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), on the question whether the doctrine of international comity may be invoked, in the public-interest phase of a *forum non conveniens* analysis, to accord a foreign forum the "stronger connection" to a dispute—and so to justify dismissal—even though Congress has extended a federal civil remedy to the extraterritorial conduct at issue and has thereby expressed a national policy favoring the adjudication of such claims in United States courts. The decision is also in tension with the en banc decision of the Fifth Circuit in *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987) (en banc), that *forum non conveniens* may not be used to frustrate the remedial purpose of a federal statute.

2. The question resolved by the panel's opinion is of particular importance. Fed. R. App. P. 40(b)(1)(D). The appeal presents a question of exceptional

3

importance: whether the panel's comity rule—under which the foreign situs of the conduct and the existence of a "less generous" foreign remedial scheme give the foreign forum the stronger connection—may be applied so as to close the courthouse door to the entire class of extraterritorial human-trafficking victims for whom Congress created the civil remedy in 18 U.S.C. § 1595(a). That rule will recur in, and defeat, every extraterritorial claim under the Trafficking Victims Protection Act.

The conflict was, moreover, unnecessary. The panel had narrower, case-specific grounds in hand and could have resolved this appeal in Scarlett's favor without adopting a comity rule that departs from the decisions of this Court's sister circuits. Specifically, the panel could have found that the district court's assignment of zero weight to the policy interest of Congress and the United States warranted reversal as an error of law that created an abuse of discretion. See 7th Cir. R. 40(e).

This petition also seeks panel rehearing under Fed. R. App. P. 40(a).

/s/ Lane A. Haygood
Lane A. Haygood
*Counsel for Plaintiff-Appellant*

4

**TABLE OF CONTENTS**

STATEMENT OF COUNSEL UNDER FEDERAL RULE OF APPELLATE PROCEDURE 40(b)(1) ............................................................................. 3

TABLE OF CONTENTS ............................................................................. 5

TABLE OF AUTHORITIES ........................................................................ 6

INTRODUCTION AND ISSUE PRESENTED ......................................... 8

GROUNDS FOR PANEL REHEARING................................................... 9

ARGUMENT FOR REHEARING EN BANC .........................................11

1.  The panel's decision conflicts with the Second Circuit and strains against the Fifth Circuit's own en banc precedent. ............................... 11

    A.  The Second Circuit weighs a congressionally expressed policy of United States adjudication heavily against *forum non conveniens* dismissal; the panel subordinated that policy to comity. ............................ 11

    B.  The panel's rule strains against the Fifth Circuit's en banc holding that *forum non conveniens* may not frustrate a federal statute's remedial purpose. ............................................................................... 12

2.  The conflict created is unnecessary................................................. 14

    A.  The panel should have avoided the conflict on narrower grounds without invoking a comity principle it misapplied............................. 14

    B.  A word on waiver. .......................................................................... 17

3.  The question presented by this case is one of exceptional importance......... 18

CONCLUSION........................................................................................ 19

CERTIFICATE OF COMPLIANCE ........................................................ 21

CERTIFICATE OF SERVICE .................................................................. 21

## TABLE OF AUTHORITIES

**Cases**

*Cisco Systems, Inc. v. Doe I*,
  609 U.S. ---,
  --- S.Ct. ----,
  2026 WL 1791225 (2026) ...............................................................15, 16, 18, 19

*Cooper v. Tokyo Electric Power Co.*,
  860 F.3d 1193 (9th Cir. 2017) ......................................................................... 13

*Fischer v. Magyar Allamvasutak Zrt.*,
  777 F.3d 847 (7th Cir. 2015) ....................................................................... 9, 13

*Ford v. Brown*,
  319 F.3d 1302 (11th Cir. 2003)......................................................................... 13

*Gonzalez v. Chrysler Corp.*,
  301 F.3d 377 (5th Cir. 2002)............................................................................ 13

*Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*,
  29 F.4th 351 (7th Cir. 2002) .............................................................................16

*Miles v. Illinois Cent. R. Co.*,
  315 U.S. 698 (1942) .......................................................................................... 17

*Roe v. Howard*,
  917 F.3d 229 (4th Cir. 2019)..............................................................................18

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*,
  589 F.3d 417 (7th Cir. 2009)............................................................................. 15

*United States v. National City Lines*,
  186 F.2d 562 (7th Cir. 1951) ........................................................................... 17

*Volodarskiy v. Delta Airlines, Inc.*,
  784 F.3d 349 (7th Cir. 2015)........................................................................ 9, 13

*Wiwa v. Royal Dutch Petroleum Co.*,
  226 F.3d 88 (2d Cir. 2000)..............................................................10, 11, 12, 14

**Statutes**

18 U.S.C. § 1595(a) ...................................................................................... passim

22 U.S.C. § 7101 .................................................................................................. 13

**Rules**

7th Cir. R. 40 .................................................................................................... 14

Federal Rule of Appellate Procedure 40 ................................................................. 9

**INTRODUCTION AND ISSUE PRESENTED**

This case presents a clean and consequential question: once Congress has extended a federal civil remedy to conduct committed abroad, and so has declared that United States courts should be open to such claims, may a district court nevertheless dismiss the suit for *forum non conveniens* on the ground that "international comity" gives the foreign forum a "stronger connection" to the dispute? The panel answered yes. In doing so it split with the Second Circuit, strained against the Fifth Circuit's en banc precedent, and—though international comity is a factor this Court has weighed in ordinary *forum non conveniens* cases— extended that factor, for the first time, to override a civil remedy Congress had extended to extraterritorial conduct.

The panel assumed that 18 U.S.C. § 1595(a) reaches extraterritorial conduct. Slip op. 9–11. It thus accepted the premise that Congress "has expressed a public-policy interest in hearing disputes like Pavlovich's in the United States." Id. at 9–10. Yet it held that this congressional policy is outweighed, as a matter of course, by New Zealand's interest in confining its citizens to its "one-of-a-kind accident-compensation scheme," and by the "concerns of international comity" said to arise whenever a United States court applies a more generous remedy than a foreign sovereign provides. Id. at 10–11. That reasoning converts comity from a makeweight

into a trump, and it does so precisely where Congress has already struck the balance the panel purported to re-strike. Because the panel's rule will govern—and defeat— every extraterritorial claim under the Trafficking Victims Protection Act, and because the split it creates was avoidable, the panel should grant rehearing and correct the opinion; failing that, the full Court should rehear the case en banc.

## GROUNDS FOR PANEL REHEARING

Panel rehearing offers the narrower course. The panel need not create a circuit split to resolve this appeal, and rehearing would allow it to withdraw or narrow the comity holding while leaving its remaining determinations undisturbed. Rehearing is warranted because the comity holding rests on three misapprehensions of controlling and persuasive authority, each of which the panel can correct without a poll of the full Court. See Fed. R. App. P. 40(a)–(b).

First, the panel misapprehended the reach of the authorities on which the comity holding depends. The opinion treats this Court's decisions in *Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 356 (7th Cir. 2015), and *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 869 (7th Cir. 2015), together with *Gonzalez v. Chrysler Corp.*, *Cooper v. Tokyo Electric Power Co.*, and *Ford v. Brown*, as authorizing the use of international comity to give a foreign forum the stronger connection. Slip op. 10–11. Those cases establish that comity may be weighed in the ordinary *forum*

9

*non conveniens* case, and Pavlovich does not dispute it. But none of them involved a federal statute that Congress had extended to the extraterritorial conduct at issue. Read for what they hold, they do not support the decisive step the panel took here—using comity to override a congressionally created extraterritorial remedy—and cannot bear the weight the opinion places on them.

Second, the panel misapprehended *RJR Nabisco*. The comity concern the opinion quoted—that plaintiffs should not be permitted to "bypass their own less generous remedial schemes," slip op. 10 (quoting 579 U.S. at 347)—is part of the Supreme Court's test for whether a statute reaches foreign conduct in the first place. Having assumed that § 1595(a) does reach such conduct, the panel invoked that principle a second time, at the *forum non conveniens* stage, to undo the extraterritorial reach it had just assumed. The panel can correct that error by confining the principle to the step at which the Supreme Court applied it.

Third, the panel overlooked authority pointing the other way. The opinion does not address *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), or the Fifth Circuit's en banc statement in *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir. 1987), each of which holds that a congressionally expressed policy favoring United States adjudication weighs heavily against—and is not to be overridden by—comity-based dismissal. Panel rehearing would permit the

10

Court to weigh that authority in the first instance and, in its light, to rest any resolution on the narrower, case-specific grounds rather than on a comity rule that sets this Circuit against its sisters.

## ARGUMENT FOR REHEARING EN BANC

Should the panel decline to rehear the case, the questions presented warrant the attention of the full Court to avoid the creation of a deeper circuit split.

**1. The panel's decision conflicts with the Second Circuit and strains against the Fifth Circuit's own en banc precedent.**

A. The Second Circuit weighs a congressionally expressed policy of United States adjudication heavily against *forum non conveniens* dismissal; the panel subordinated that policy to comity.

In *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000), the Second Circuit reversed a *forum non conveniens* dismissal because the district court had failed to weigh the policy, embodied in a federal statute, favoring the adjudication of such suits in United States courts. *Id.* at 106. The court held that where Congress has legislated to open United States courts to a category of extraterritorial claims, that policy is a public-interest factor entitled to substantial weight, and that such suits should not be "facilely dismissed on the assumption that the ostensibly foreign controversy is not our business." *Id.*

The panel here did what *Wiwa* forbids. It acknowledged the congressional policy—indeed, it assumed Section 1595(a)'s extraterritorial reach for the sake of

11

argument—and then discounted that policy to nothing, holding that comity and New Zealand's interest in its own remedial scheme gave the foreign forum the "stronger connection." Slip op. 10–11. Under *Wiwa*, the congressional policy weighs heavily against dismissal. Under the panel's rule, it is systematically outweighed by the very features (foreign situs and a less generous foreign scheme) that are present in every extraterritorial case. The two approaches cannot be reconciled.

That *Wiwa* arose under the Alien Tort Statute and the Torture Victim Protection Act of 1991 does not narrow the conflict; if anything, it sharpens it. The principle *Wiwa* applied is structural: a congressionally expressed policy favoring United States adjudication is a heavily weighted public-interest factor that cannot be overridden by generalized "not our business" reasoning. If anything, the policy is stronger here, because Section 1595(a) is an express statutory cause of action that Congress itself created, not a remedy fashioned by the judiciary.

Because the panel did not cite to or distinguish *Wiwa*, that provides a basis for rehearing, to avoid setting this Circuit at odds with its sister Circuit.

B. The panel's rule strains against the Fifth Circuit's en banc holding that *forum non conveniens* may not frustrate a federal statute's remedial purpose.

In a similar vein, the Fifth Circuit (itself sitting en banc) held that *forum non conveniens* cannot be used to frustrate the remedial purpose of a federal statute. *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987) (en

banc). The panel's rule collides with that principle. It authorizes *forum non conveniens* dismissal in the mine-run of Section 1595(a) cases and so frustrates the remedial purpose Congress announced when it opened United States courts to extraterritorial trafficking claims. *See* 22 U.S.C. § 7101(b)(24) (finding trafficking "a transnational crime with national implications").

Tellingly, the panel relied on a later Fifth Circuit panel decision, *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 (5th Cir. 2002), for the proposition that comity supports dismissal, **without** acknowledging the Fifth Circuit's contrary en banc statement. Slip op. 11. The panel is correct that international comity may be weighed in an ordinary *forum non conveniens* case; this Court has said as much. *See Volodarskiy v. Delta Airlines, Inc.*, 784 F.3d 349, 356 (7th Cir. 2015); *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 869 (7th Cir. 2015). But *Volodarskiy*, *Fischer*, the out-of-circuit decisions the panel invoked, *Cooper v. Tokyo Electric Power Co.*, 860 F.3d 1193, 1211 (9th Cir. 2017), *Ford v. Brown*, 319 F.3d 1302, 1304 n.3 (11th Cir. 2003), and even *Gonzalez* itself are all different than this case, in that none of those cases involved a federal statute where Congress made the choice to reach the specific extraterritorial conduct at issue. Not one of the authorities the panel cited had ever applied comity to displace a congressionally created extraterritorial civil remedy. The panel was the first to do so, and it is that novel extension—not the general

13

availability of comity—that conflicts with *Wiwa* and the Fifth Circuit's en banc rule in *in re Air Crash Disaster.*

**2.  The conflict created is unnecessary.**

En banc review is particularly warranted where a panel creates an inter-circuit conflict that its disposition did not require. See 7th Cir. R. 40(e) (a proposed opinion that would "create a conflict between or among circuits" ordinarily circulates to the full court before publication). That the panel itself acknowledged the Supreme Court "has yet to explicitly consider international comity in forum non conveniens," slip op. 10, and drew the principle from separate concurrences, *id.*, only confirms that the rule it adopted was a choice rather than a command. Three features of the panel's decision show that the split here is avoidable, and the full Court can correct that.

> A.  The panel should have avoided the conflict on narrower grounds without invoking a comity principle it misapplied.

First, the panel had narrower grounds in hand. It separately held that New Zealand is an available and adequate forum, that Pavlovich's foreign-plaintiff status entitled her forum choice to only "marginal weight," and that the private-interest factors did not favor the United States. Slip op. 5–9. It could have resolved the case on those case-specific determinations under the abuse-of-discretion standard it recited—under which reversal only requires that the district court "completely ignore[]" a relevant factor, *id.* at 5 (*citing Stroitelstvo Bulgaria Ltd. v. Bulgarian-*

*American Enterprise Fund*, 589 F.3d 417, 424 (7th Cir. 2009))—without announcing a categorical comity rule about the weight of a congressionally created extraterritorial remedy. It did not need to hold that comity gives the foreign forum the stronger connection in order to find an abuse of discretion.

Second, the panel misread the comity principle it borrowed from the Supreme Court. It invoked *RJR Nabisco*'s observation that applying United States remedies to foreign claims would "unjustifiably permit their citizens to bypass their own less generous remedial schemes." Slip op. 10 (*quoting RJR Nabisco v. European Community*, 579 U.S. 325, 347 (2016)). But that observation belongs to *RJR Nabisco*'s analysis of whether a statute reaches extraterritorial conduct in the first place—the step at which courts decide whether Congress has spoken. Once that question is resolved in favor of extraterritoriality, as the panel assumed here, the comity concern has been addressed by Congress; it is not available to be redeployed at the *forum non conveniens* step to undo the extraterritorial reach the court has just assumed. The panel used a step-one principle to defeat a step-two remedy, and so gave comity a second, dispositive life that *RJR Nabisco* never contemplated.

Third, the panel's reliance on *Cisco Systems, Inc. v. Doe I* cuts the other way. *Cisco Systems, Inc. v. Doe I*, 609 U.S. ---, --- S.Ct. ----, 2026 WL 1791225 (2026). *Cisco* holds that courts may not fashion judge-made causes of action for violations of

15

international law, because creating causes of action is a task for Congress, not the judiciary. That separation-of-powers principle counsels enforcing—not diluting—a cause of action Congress did create. Section 1595(a) is an express statutory remedy; *Cisco*'s concern about judges intruding on Congress's prerogative supports respecting Congress's extraterritorial choice, not overriding it through comity. Furthermore, the statute at issue in *Cisco* is and was distinguished from the TVPA during argument in this case, as that statute (the Torture Victim Protection Act of 1991) requires a specific finding that the foreign jurisdiction's law is inadequate. The TVPA is precisely the opposite; it begins with the express legislative presumption that the law of foreign jurisdictions is inadequate, and that is why United States courts are open to suits against United States residents under the TVPA.

The panel cited *Cisco* for the unremarkable point that international-law suits can carry foreign-policy consequences, slip op. 10, but *Cisco* concerned the Alien Tort Statute and the Torture Victim Protection Act (*supra*), not a self-executing statutory damages remedy. The analogy is inapt, and it papered over a conflict rather than justifying one.

Finally, Scarlett argued in her briefing that the district court's error of law constituted an abuse of discretion. *See Instituto Mexicano del Seguro Social v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 357 (7th Cir. 2002). The assignment of no weight

at all to the policy choices of Congress and the United States was just such an error. *See United States v. National City Lines*, 186 F.2d 562 (7th Cir. 1951); *Miles v. Illinois Cent. R. Co.*, 315 U.S. 698 (1942) (Congress's choice precludes the courts from substituting their view that the "normal expense and inconvenience of trial in permitted places" would be "inequitable and unconscionable." The panel could have decided this case on that narrow ground alone, that the weighing of the public and private interest factors was in error and an abuse of discretion.

B. A word on waiver.

The panel held that Pavlovich waived the distinct, categorical contention that *forum non conveniens* can never apply to a claim Congress has made extraterritorial. Slip op. 11–12. Counsel at argument was clear that no such categorical rule was sought or was advisable. This petition does not renew any such contention. The question presented here—whether comity may give a foreign forum the stronger connection in the public-interest balance despite a congressionally created extraterritorial remedy—was squarely presented, litigated, and decided on the merits. The panel itself drew the line: it explained that Scarlett "argued only that Congress's preference for hearing claims like hers in the United States is a public-interest factor weighing against dismissal." *Id.* at 11. That is the preserved argument the panel decided, and the comity holding, *id.* at 9–11, was its answer. The conflict

identified here thus arises from a holding the panel reached, not from an argument it declined to reach. And if the panel misweighed that factor in a fashion that sets up an inadvisable, avoidable circuit split, then rehearing is exactly the vehicle to prevent such a principle becoming a part of this Circuit's jurisprudence.

### 3.  The question presented by this case is one of exceptional importance.

The panel's rule does not merely mis-apply the factors in a single case; it forecloses an entire statutory remedy. By its terms, Section 1595(a)'s extraterritorial reach exists to serve victims of trafficking committed abroad. See *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019). Every such case will, by definition, involve foreign conduct and—wherever the victim's home country offers a "less generous" scheme—a foreign sovereign with an asserted interest in confining redress to that scheme. The panel's holding that these features give the foreign forum the "stronger connection" therefore supplies a ready basis to dismiss the paradigmatic Section 1595(a) case. A remedy that Congress extended to reach the world will, under the panel's rule, be routinely unavailable to the very victims Congress meant to protect. That is the definition of a rule that frustrates the remedial purpose of a federal statute. *Air Crash Disaster*, 821 F.2d at 1165.

The importance is heightened by the moment. In *Cisco*, the Supreme Court sharply curtailed judge-made international-human-rights litigation and returned the

initiative to Congress. The Trafficking Victims Protection Act is the situation *Cisco* circumnavigated: the situation where there is an express, extraterritorial civil remedy. Whether that remedy survives contact with *forum non conveniens* or is quietly nullified by comity in the ordinary case is a question of national significance that warrants the full Court's attention. At a minimum, the Court should not permit the answer to be supplied, and an inter-circuit split created, by a panel that assumed the statute's reach without deciding it.

## CONCLUSION

The Court should grant panel rehearing, withdraw or narrow the portion of the opinion holding that international comity gives New Zealand the stronger connection, and either reverse or rest any affirmance on the narrower grounds the opinion separately identifies. In the alternative, the petition for rehearing en banc should be granted, the panel's judgment vacated, and the case reheard, so that the full Court may hold that a congressionally created extraterritorial civil remedy is entitled to substantial weight in the *forum non conveniens* public-interest analysis and may not be displaced by the generalized international-comity concerns present in every extraterritorial case.

Respectfully submitted,


/s/ Lane A. Haygood
Lane A. Haygood
KAMERMAN, UNCYK, SONIKER &
KLEIN, P.C.
1700 Broadway
New York, NY 10019
(212) 400-4930
lhaygood@kusklaw.com
Texas Bar No. 24066670
*Counsel for Plaintiff-Appellant*

20

## CERTIFICATE OF COMPLIANCE

1. This petition complies with the type-volume limitation of Fed. R. App. P. 40(b)(2) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 2,807 words, as counted by the word-processing system used to prepare it, which is fewer than 3,500 words.

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Lane A. Haygood
Lane A. Haygood

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, the foregoing Petition for Panel Rehearing and Rehearing En Banc was filed with the Clerk of the Court using the CM/ECF system, which will serve the document electronically on all counsel of record for Defendant-Appellee Neil Gaiman.

/s/ Lane A. Haygood
Lane A. Haygood
*Dated: July 13, 2026*

21